The publishing a forged note of hand, or any other writing of private nature, though not under seal, as a genuine note or writing, with intent to defraud, is indictable at common law.

The publishing a counterfeit note of the Bank of North America with intent to defraud, is indictable at common law, and is punishable by imprisonment at hard labour under the acts of 5th *April* 1790, and 4th *april* 1807.

Where a statute *creates,* or *expressly prohibits* an offence, and inflicts a punishment, the statute punishment cannot be inflicted unless the indictment concludes *contra formam statuti.* Otherwise, where the statute only inflicts a punishment on that which was an offence before.

In an indictment for forging a bank note, it is not necessary to set forth the ornamental parts of the bill, as the devices, mottos, &c.

## The Commonwealth *against* SEARLE.

THE defendant was indicted at an *Oyer and Terminer holden by the judges of the Supreme Court after the December term, for forging, and for uttering and publishing as true, a counterfeit ten dollar note of the Bank of North America.

The indictment contained two counts. The 1st was for forging, and procuring to be forged, the note in question. The 2d charged that " the said *John Searle* on the same " day and year aforesaid at the county aforesaid, with force " and arms, having in his custody and possession a certain " other false forged and counterfeited paper writing, partly " written and partly printed, purporting to be a true and " genuine promissory note for the payment of money, called " a bank note of the Bank of North America, and purporting " to be signed by *J. Nixon* president, and also *by the cashier* " *of the said bank,* the tenor of which said last mentioned " false forged and conterfeited paper writing, partly written " and partly printed, purporting to be a true and genuine " promissory note for the payment of money, called a bank " note of the Bank of North America, is as follows, that is " to say

| X | I promise to pay to *D. Catwell* or bearer on demand ten dollars. *Philadelphia* 26 of *February* 1808 *n* 2467 *e* 614. For the President Directors and Company of the Bank of North America. | 10 |
| 10 | *H. Drinker* j Cash, *J. Nixon* Prest, | X |

" falsely illegally knowingly fraudulently and deceitfully did " *utter and publish* as a true and genuine promissory note for " the payment of money, called a bank note of the Bank of " North America, the said last mentioned false forged and " counterfeited paper writing, partly written and partly print-

* The importance of this case it is presumed will justify the reporter in inserting it in this place, although it is not in strictness a decision in the Supreme Court.

" ed, purporting to be a true and genuine promissory note
" for the payment of money, called a bank note of the Bank
" of North America, he the said *John Searle*, at the time of
" uttering and publishing the same, then and there well
" knowing the same to be false forged and counterfeited,
" with intent to defraud *Joseph Simmons*, *to the evil example*
" *of others in like case offending*, *and against the peace and*
" *dignity of the commonwealth of Pennsylvania.*"

The defendant was found not guilty upon the first, and
guilty upon the second count; and his counsel moved in
arrest of judgment for the following reasons:

1. Because the uttering a note of the Bank of North
America knowing the same to be counterfeit, is not indictable
at common law, but is an offence created by act of assembly,
and therefore the indictment should have concluded " against
" the form of the act of assembly." Or if it is an offence at
common law, still, as it is punishable only by act of assembly,
no punishment can be inflicted, because the indictment does
not conclude against the form of the act &c.

2. Because the note as described in the indictment differs
from the note proved to be uttered, as the words " ten" and
" *cavendo tutus*,"* which were in the note proved to be
uttered, are not mentioned in the description of the note laid
in the indictment.

3. Because the indictment states that the note purported
to be signed by the cashier, without naming him, and the
note produced is signed by *H. Drinker* j Cash.

*Phillips* for the defendant. 1. Publishing a counterfeit note
is no offence at common law. It was a long time question-
able, whether even the forgery of a private unsealed instru-
ment was indictable at common law except as a cheat; but
although that point may have been settled, the uttering of
such a forgery stands upon a different ground; the former
being distinct from every other offence, and consisting in the
fabrication of the instrument, the latter being merely an at-
tempt at cheating, by a false token. The statute of 2 *Geo.* 2.
*ch.* 25. was the first that punished the uttering of a forged

---

* The words " *cavendo tutus*," were the motto to an ornamental device
on the bill, in the centre of which was the word " ten."

note as a felony; and it recited in the preamble that it was found necessary to remedy the defects in the existing law. So, the common law not being adequate to the mischief, the legislature by an act of the 18th *March* 1782, made the uttering forged notes of the Bank of North America a felony. This act was repealed on the 13th *September* 1785, when the incorporation of that bank was overthrown; and when by the law of 17th *March* 1787, 2 *St. Laws* 499, the corporation was revived, nothing was said as to the revival of the provision against forging and uttering forged notes of that bank, and of course it was at an end. The first act for the reform of the penal code, passed the 5th *April* 1790, 2 *St. Laws* 801, contains no punishment for this offence; but in the act of 22d *April* 1794, 3 *St. Laws* 600, it is declared that if any person shall be concerned in printing, signing, or *passing* a counterfeit note of this bank, he shall be punished by fine and imprisonment at hard labour. It is this act which creates the offence for which the defendant is indicted; and therefore the indictment is bad, as it does not conclude *contra formam statuti*. If an offence be newly enacted or made an offence of a higher nature, the indictment must conclude *contra formam statuti*. 2 *Hale's H. P. C.* 189. But if this is an offence at common law indictable in this form, no punishment can be inflicted; not the common law punishment, because where there is a punishment by act of assembly, the common law punishment is taken away by the act of 21st *March* 1806, 7 *St. Laws* 569; nor the punishment by act of assembly, because not concluding *contra formam statuti*, it stands as an indictment at common law, and can only receive the penalty that the common law inflicts. 2 *Hale's H. P. C.* 191. The precedents conclude against the form of the statute. 2 *East Cr. Law* 874.

2 and 3. The variance between the note laid and the note proved is fatal. The utmost strictness is required in setting out the tenor. The words "purporting to be a bank note," imply that the paper on its face has the appearance of a bank note; *The King* v. *Jones* (a); and the instrument charged to be forged, must be set out. *The King* v. *Lyon* (b). The instrument here charged to be forged, omits certain words

(a) 1 *Leach* 243.          (b) 2 *Leach* 681.

and devices contained in the genuine bill, so that it does not
purport as is alleged, and it is not completely set out. A va-
riance in the name, as *King* instead of *Ring*, defeats the
indictment. *The King* v. *Reading* (*a*). So an indictment for
forging a note purporting to be signed by *Christopher Olier*,
is not supported by a note with the signature of *C. Olier*.
*The King* v. *Reeves* (*b*). *The King* v. *Lee* (*c*).

*Gibson* and *Lewis* for the commonwealth. The 2d and 3d
exceptions have no effect on a motion in arrest of judg-
ment; they would have been urged with more propriety as
objections to evidence, or upon a motion for a new trial.
The 2d however is founded upon the mistake that the orna-
mental devices upon the bill are parts which it is material to
set out. Every part of the bill that was evidence of contract,
is set out in words and figures, and that is all that is requisite.
*Commonwealth* v. *Bailey* (*d*), *Commonwealth* v. *Stevens* (*e*).
The 3d is also a mistake. The purport of an instrument is
its meaning, on its face; certainly the counterfeit note pur-
ported to be signed by the cashier. When the tenor of the
bill is set out, then the signature is given.

[The court here intimated their opinion, that none of the
exceptions, save the first, were applicable to a motion in
arrest of judgment, but to a motion for a new trial, upon the
ground of the verdict's being against evidence. At the same
time, they expressed their concurrence with both the cases
from the *Massachusetts Reports*, and that it was not neces-
sary to set forth the ornamental parts of the bill, the devices
or mottos.]

The 1st exception alone is proper in arrest of judgment;
but it is founded upon a false position, that the publishing
of the note was not indictable at common law. Forging a
receipt for goods which the defendant is bound to deliver, is
indictable at common law. *The King* v. *Ward* (*f*). This
case decides that the forgery of any writing by which a per-
son might be prejudiced, although in fact no one was preju-

(*a*) 2 *Leach* 672.          (*d*) 1 *Mass. Rep.* 62.
(*b*) 2 *Leach* 933.          (*e*) 1 *Mass. Rep.* 203.
(*c*) 1 *Leach* 464.          (*f*) 2 *Stra.* 747. 2 *Ld. Ray.* 1461. *S. C.*

1810.

COMMON-
WEALTH
*v.*
SEARLE.

diced, was indictable at common law as a forgery; and the publication of the forgery with intent to defraud, though in fact no person was defrauded, stands upon the same principle. 2 *East's Cr. L.* 972. *s.* 51. There is not an act of assembly in force, in which this is made an offence at all, or where it is made an offence of a higher nature than it was at common law, or where it is prohibited; the punishment alone is prescribed, and that is lighter than it was at common law. The 4th section of the act of 5th *April* 1790, enacts that every person convicted of any offence not capital, for which by the laws in force before the act of 15th *September* 1786, burning in the hand, cutting off the ears, nailing the ear to the pillory, placing in and upon the pillory, whipping or imprisonment for life, was or might be inflicted, shall instead of that punishment, be fined and imprisoned at hard labour for any term not exceeding two years. It is under this act that publication of a forgery is punishable. The questions are therefore only whether the indictment, under these circumstances, should have concluded against the form of the act. If a statute *creates* an offence, or if a *misdemeanor* at common law is converted by statute into a *felony*, there the indictment must conclude *contra formam statuti;* and if a statute contains a *prohibition* of a matter which was an offence at common law, and inflicts a punishment, judgment for that punishment cannot be given unless the indictment concludes against the statute. But where the offence is at common law, and the statute merely inflicts a punishment, there it is not necessary that the indictment should so conclude. The statute punishment may be inflicted without it. 2 *Hale* 189, 190, 191. *The King* v. *Smith* (*a*). The act of 22d *April* 1794, does not apply to this case, because it is the *passing* of the note, and not the *publication,* that is, the obtaining some person to take it in payment, and not the offering it in payment, which is punished by the 35th section of that act; but if it were punishable under that section, it might still under the above authorities be so punished on this indictment. The precedents in this state are with us. In *The Commonwealth* v. *Archer* in the Mayor's Court, *November* 1806, and in *The Commonwealth* v. *Lewis* in the Quarter Sessions, *November* 1808, the defendant

(*a*) *Doug.* 441.

was punished under the act of 1790 for forging bank notes, although the indictment did not in either case conclude against the form of the act.

TILGHMAN C. J. delivered the opinion of the court.

The defendant has been indicted and found guilty, of *uttering* and *publishing* as true and genuine, a forged note of the Bank of North America, knowing the same to be forged, with intent to defraud *Joseph Simmons.* A motion has been made in arrest of judgment, because the indictment does not conclude " against the form of the act of assembly &c." His counsel contend, that the offence charged in the indictment, is not indictable at common law; and that even if it was, no judgment inflicting the common law punishment can be given, because by the act of 21st *March* 1806, in cases where punishment is prescribed by act of assembly, no punishment shall be inflicted agreeably to the provisions of the common law. It is said, that for the offence charged in the indictment, there is a punishment provided by act of assembly; yet that punishment cannot be inflicted, because the indictment makes no mention of the act of assembly. Hence it is inferred that no judgment can be given on the indictment. It will be necessary therefore to consider, 1st, Whether the offence is indictable at common law. 2d, Whether it is punishable by any act of assembly. And 3d, Whether judgment for the punishment prescribed by act of assembly, can be rendered on this indictment.

1. It seems to have been the opinion of the old writers on criminal law, that forgery at common law could not be committed with respect to any writing of a *private* nature, unless the same was under *seal.* But this point was fully investigated, and decided to the contrary, in the case of *The King* v. *Ward* (2 *Ld. Ray.* 1461: 13 *Geo.* 1.); since which the law has been considered as settled. In that case, the indictment contained two counts; the 1st, for forging an unsealed writing, with intent to defraud the Duke of *Buckingham,* and the 2d, for *publishing* the same writing with the same intent. The court did not decide on the second count, because there was no occasion; but I can see no reason, why the publication should not be indictable, as well as the forgery: every

mischief that might be produced by one, might also be pro-
duced by the other. One point decided by the court was,
that it was immaterial whether the Duke of *Buckingham* was
actually injured by the forgery or not. In giving their opi-
nion they say, it may be inferred from the statute 5 *Eliz.*
*chap.* 14. that the forgery of writings without seal, was an
offence at *common law*, because the preamble of the statute
recites, that the wicked practice of making, *forging*, and *pub-
lishing*, deeds, writings, &c. hath increased, chiefly because
the punishments limited by the laws and statutes were too
mild. Now this argument has as much weight to prove that
the publication was punishable, as that the forgery itself was,
because both are mentioned. But what I chiefly rely on is,
that the *publication* is in its nature as dangerous to society
as the forgery, and therefore there is no good reason, why
the common law should punish one, and not the other. There
have been so many statutes in *England* inflicting severe
punishments on forgery, and the uttering and publishing of
forged writings, within the last century, that we are not to
expect many precedents of indictments at *common law* in
that country. But no authority, or even *dictum* has been pro-
duced, to shew that publication was not an offence. We may
safely conclude therefore, from the reason of the thing, that
it is.

2. We have no act of assembly expressly prohibiting the
forging, or uttering of forged notes of the Bank of North
America. But the act of 22d *April* 1794, sect. 5, enacts,
that every person who shall be convicted of having falsely
*uttered, paid,* or *tendered* in payment, any counterfeit or forged
*gold* or *silver* coin, knowing the same to be forged or coun-
terfeit, or shall be concerned in *printing, forging*, or *passing*
any counterfeit notes of the Banks of *Pennsylvania, North
America*, or the *United States*, knowing them to be such, or
altering any genuine notes of any of the said banks, shall be
sentenced to a confinement in the gaol and penitentiary
house, for any term not less than four, nor more than fifteen
years &c. The offence laid in the indictment does not come
within this act, for the plaintiff is not charged with *passing*,
but only uttering and publishing, which is a different thing.
The different expressions in this act, with respect to gold
and silver coin, and bank notes, shew that the legislature

intended a difference; and there is really a difference in the nature of the things. To *utter* and *publish* is to declare or assert directly or indirectly, by words or actions, that a note is *good*. To offer it in payment would be an uttering or publishing; but it is not *passed*, until it is received by the person to whom it is offered. It is unnecessary to decide whether it would be *passed*, if the person to whom it is offered, receives it for the purpose of having it examined. The indictment only charges the uttering and publishing it as true and genuine. But there is another act of assembly, passed the 5th of *April* 1790, which provides for the offence set forth in this indictment. By the 4th section of that act, persons convicted of any offence not capital, for which by the laws in force before the 15th *September* 1786, burning in the hand, cutting off the ears, nailing the ears to the pillory, setting in the pillory, whipping, or imprisonment for life was inflicted, shall instead of such punishment, be fined and sentenced to undergo a confinement at hard labour &c. for any term not exceeding two years at the discretion of the court. And by the act of the 4th of *April* 1807, this time is increased to any term not exceeding seven years at the discretion of the court. There is no doubt but this offence might have been punished by *setting in the pillory*. It is therefore within the act.

3. It remains to be considered, whether under this indictment we can give judgment for the punishment prescribed by the act of assembly. I take the law to be, that where a statute *creates* or expressly *prohibits* an offence, and inflicts a punishment, the indictment must conclude against the form of the statute. But where a statute only inflicts a punishment on that which was *an offence before*, there is no necessity of mentioning the statute. When an indictment charges a person with having done a thing against the form of the statute &c., the obvious meaning is that the offence was committed against the form of the statute, without any reference to the punishment. This seems to be Lord *Hale's* idea, who says, " if an offence be *at common law* and *also* " *prohibited* by statute, with a corporal or other penalty, yet " it seems, the party may be indicted at common law; " and then though it concludes not *contra formam statuti*, it " stands as an indictment at common law, and can receive

1810,

COMMON-
WEALTH
*v.*
SEARLE.

" only the penalty that the common law inflicts in that case."
2 *Hale* 191. The expressions of *Hawkins* are more general,
and less accurate. He says, " it seems to be taken as a com-
" mon ground, that a judgment by statute shall never be
" given on an indictment at common law, as every indict-
" ment which doth not conclude *contra formam statuti* shall
" be taken to be." I presume his meaning was the same as
*Hale's;* but if his opinion was, that judgment for the punish-
ment prescribed by statute, could in no case be given on an
indictment not concluding *contra formam statuti*, he was
mistaken, as may be proved by the highest authority. By
the statute 25 *Geo.* 2. *c.* 37, the judgment in murder is alter-
ed; the day of the execution is mentioned, and the body of
the criminal is ordered to be dissected and anatomized; yet
the indictments since that statute do not conclude *contra
formam statuti.* This may be seen in the precedent of an in-
dictment and judgment for murder in the appendix to 4th
*Blackstone's Commentaries;* also in the trial of the Earl of
*Ferrars* convicted and executed for murder, State Trials
in the year 1760; and in many other cases. It may be proper
to mention an instance establishing the same principle in
*England*, though not an authority here, because it is since our
revolution. By stat. 30 *Geo.* 3. *ch.* 48, the judgments against
women convicted of treason or petty treason are altered; yet
the indictments continue to be drawn at *common law.* I do
not know that the point has ever before been brought before
the courts of this state for decision; but the precedents as
far as they have been searched, are to be found in both ways.
I make no doubt but in a vast many cases, judgments under
acts of assembly have been given on indictments at common
law.

Upon the fullest deliberation, the court are satisfied, that
the judgment ought not to be arrested.

                                    Motion overruled.

The defendant was afterwards sentenced to three years'
imprisonment at hard labour.