COMMONWEALTH *v.* S. W. HUTCHINSON.

[Charged with uttering and passing a certain false writing, and obtaining thereby property of great value under false pretences.]

December, 1842. The arguments of the counsel in the case were concluded.

BY THE RECORDER: It may be said that the expression at length, and in writing, of an opinion of the magistrate before whom a primary hearing, exparte, is had, on holding the party charged to answer before the proper tribunal, is calculated to prejudice his rights and interests on the trial by a jury. Reflection will convince all, that no injury can follow such a course, but on the contrary, much good will result to the community at large, and to the individual who may be the immediate object of its operation.

If the magistrate forms any opinion, it must be expressed, either by the binding over to answer, or a discharge. If the opinion so formed is the result of reason, enlightening the judgment, it may serve to excite inquiry into the case, and elicit truth; the effect of expressing the mode of arriving at such opinion, can work no greater prejudice to the case, than the effect or result of the opinion, should it be a binding over to answer.

One benefit which will follow the adoption of such a course in important, or novel, or doubtful cases, will be to prevent the holding of parties to appear and answer, when the magistrates may not be able to satisfy them-

selves upon a careful review, that probable cause, either as to the law or the facts, is established to their satisfaction. It would prevent, too, the application for a "habeas corpus," which now too generally follows a binding over by a magistrate; and it would save the time of grand juries, who are forced to "ignoramus" many bills because the evidence does not warrant a "finding." The benefits which would flow from this course, far outweigh the disadvantages, so far as the practice itself is concerned; and as for the rights of the parties, it is a matter of much doubt if they will not be even better guarded.

Entertaining these views, I have thought it proper to set out the reasons that have induced me to give the judgment in this case. Samuel H. Hutchinson is charged with uttering and passing a note or letter, purporting to be written by Elias Boudinot of the city of New York, not signed by Boudinot, but written in the third person, to one of the creditors of the said Hutchinson in Philadelphia; which said note or letter it is alleged was not written by the said Boudinot, and that by means of the said forgery, one other of the creditors of the said Hutchinson, was induced to loan a sum of money to the said Hutchinson, to enable him to make arrangements with all his creditors in Philadelphia, or for other purposes tending pecuniarily to benefit him the said Hutchinson. This is the offence as charged. It now remains to be decided, whether this offence is a forgery. *William L. Hirst, esq.*, contends for the defendant, that it is not a forgery. *F. E. Brewster & St. George T. Campbell*, for the prosecution, that it is forgery at common law. To arrive at correct conclusions,

it is necessary—1st. To inquire if the crime charged is a forgery; and 2d. If the facts make out the charge. Forgery, says Blackstone, is "the fraudulent making and alteration of a writing to the prejudice of another man's right;" 4 Bl. Com. 247. In 2 East P. C. 852, it is held to be a false making, a making malo animo of any written instrument for the purpose of fraud and deceit. In Bac. Abr. 568, it was held in the case of the King against John Ward of Hackney, "that to forge a release or acquittance for the delivery of goods, although not under seal, was forgery at common law." This was going far in those days, in interpreting the law as to forgery; for by the statute of 5th Elizabeth, it seems that forgery was held only to apply to instruments under seal, wills, and the like.

In 1 Addis 33, 34, it is held that the forgery of any writing which may be prejudicial to another's right, is indictable at common law. It may be not without instruction here to define the word "forge," which is said in 3 Inst. 169, "to forge is metaphorically taken from the smith who beateth upon his anvil, and forgeth what fashion or shape he will;" the Latin word to forge, is falsare or fabricare. In 2 Binn. 332, Commonwealth v. Seal, the following point of law is settled, and in Pennsylvania, Massachusetts, &c., remains to be the law: That the publishing of a forged writing of a private nature, though not under seal, with intent to defraud, is an offence indictable at common law. The word "writing" has no specific designation given to it; any written instrument, therefore, is embraced under this term. It matters not, how, or in what form it may be drawn up,

if it is a "writing" which can admit of a false intent
being conveyed thereby, it is sufficient. This is the
law as to forgery; and the making, altering, and uttering,
or passing any writing which gives thereto a false cha-
racter, and whereby another's rights are prejudiced, is
a forgery at common law. The statute law of Pennsyl-
vania, makes only certain acts forgery, such as bank
notes, coin, &c. See Purd. Dig., tit. Forgery. Having
thus established the law, it only remains to ascertain if
the facts of this case, constitute forgery as thus defined.

Hutchinson began business in this city; he went into
debt for his first purchases; became involved; borrowed
to pay his debts; executions issued;—at this stage of
affairs, his creditors endeavoured to aid him to extricate
himself; he goes on to New York, to see if it is not in
his power to make some arrangements, stating that he
has an annuity of $2000, and that Col. Ellis is the trus-
tee. On returning from New York, he brings a note
purporting to come from one Elias Boudinot, whom he,
Hutchinson, represents to be a lawyer, and a highly
respectable citizen of New York. This note of Boudi-
not's, Hutchinson says was written by Boudinot, and
that he was directed to give it to the persons to whom
it was addressed. This note states that he, Boudinot
the reputed writer, has communicated the result of his
interview with Col. Ellis, to Hutchinson; that he, Boudi-
not, is prevented from visiting Philadelphia, in conse-
quence of important business, till the "middle of the
next week, when he hopes to be able to make such
arrangements as will be satisfactory," &c. This note
is written in the third person and addressed to the
Messrs. Ornes; on the faith of this note, T. W. L. Free-

man advances $ 256 to Hutchinson, for the purpose of aiding him in his embarrassments.

It appears that Boudinot did not write this note; that Hutchinson, when accused of the perjury, evaded the charge by saying, one of Boudinot's clerks wrote it; and on being told Boudinot had no clerks, said he would make it all right, that he did not wish any difficulty, that he would make restitution; that he would make all right. It also appears that Boudinot is not a lawyer; that he was employed about the sheriff of New York's office, and that he is now " confined to the limits" by some legal process.

This state of the facts, presents these conclusions: 1st, the writing was made; 2d, that a false character was given to it, as it purported to come from one who was an attorney at law, and after his interview with Col. Ellis, who was the trustee of Hutchinson's income, would, in the " middle of next week," be able to make certain arrangements satisfactory to the creditors of Hutchinson; 3d, that by reason of this false character thus given, money was advanced and loaned to the party, who uttered and published the said alleged false writing, of another person; 4th, that the rights of the person so advancing and loaning the said sum of money, have by this alleged forgery been prejudiced, and lastly, that the transaction had its origin malo animo. These are deductions from the evidence, exparte. They are matters for the jury. They are matters of fact. If the jury draw these conclusions from the evidence, and the defendant is unable to explain them on the trial, the court in its charge will say if it be forgery or not.

The counsel for the prisoner contends that this can-

not be a forgery, because it is not such a paper as is liable to be forged, and cites the case of The People *v.* Shall, 9 Cow. 778, in which it is held that "the forgery of a writing purporting to contain a mere naked promise to pay a sum of money in labour, expressing no consideration and being connected with no consideration by averment in the indictment, is not indictable;" and again in 1 Wend. 198, The People *v.* Fitch.

The bearing of the case in 9 Cow. has no relation to the present case. In New York, forgery is a statute offence. By the Revised Statutes of New York, vol. ii., 670, 675, forgery, is divided into four degrees, and as the indictment against Shall, was drawn under the statute, and the case was one made forgery or not by the New York statute, the court could only rule as they did. This case is a common law forgery.

But even in the case in 1 Wend. cited by Mr. Hirst, the court adopt the interpretation of baron Eyre, which is, the "false making an instrument which purports on the face of it to be good and valid for the purposes for which it was created, with a design to defraud." It must be borne in mind, that both these cases refer to statutory forgeries; yet even in such cases, baron Eyre holds that a false making an instrument, purporting to be good and valid for the purposes for which it was intended, with a design to defraud, is forgery. This it seems was the exact character of Boudinot's note. It was a false making; Boudinot did not make it; it purported on its face to be good and valid for the purpose for which it was intended. The purpose for which Boudinot's note was intended, as is alleged, was to effect certain arrangements or delays fraudulently, by reason

of the assurance contained in the note that he, Boudinot, would in the middle of next week come to Philadelphia, and make such satisfactory arrangements as he could, after the communication he had held with Col. Ellis the reputed trustee. So that even in New York, this very offence, which the learned counsel for the prisoner contends is not forgery at common law here, would be forgery in New York under the statute, provided the facts should be so found by the jury.

I am inclined therefore to the opinion, that both the cases cited by the defendant's counsel, are inapplicable.

If then forgery at common law is the making, altering, and uttering or passing any writing which gives thereto a false character, and whereby another's rights are prejudiced, and I take it so to be, it remains for me only to say, that for such an offence the party charged must appear and answer at the proper tribunal.

It is no part of my duty to do more than to say, that this charge is one, legally substantiated; and that the facts present probable cause to believe that the party so charged, is guilty. The facts in this case as fully establish the second charge, of obtaining the money in question, under false pretences; and as both charges are misdemeanors, I shall bind the defendant over for trial, on both. The commonwealth may elect which to prosecute.

Samuel H. Hutchinson is therefore ordered to give surety in the sum of two thousand dollars, for his appearance at the next term of the court of general sessions for the city and county of Philadelphia, for trial.