COMMONWEALTH *v.* DAVID M'DOWELL.

[Charged on oath of Charles Dull with forgery.]

ON the 25th of August, 1845, the RECORDER gave judgment as follows :

The facts as proved in this case by the commonwealth, are these : M'Dowell, some moths ago, became the book-keeper of Charles Dull, paper merchant. While in his employ, he made, at various times, certain entries, in a book of original entries, purporting to be entries of materials purchased, when, in fact, no such purchases were ever made, and the moneys which appeared on the face of the books to have been disbursed in this way, were, as it is alleged, taken by the said M'Dowell and appropriated to his own use. As far as is ascertained, Mr. Dull charges that over $500 have thus been taken by the said M'Dowell, by means of these false entries. These entries are charged to be forged or false, and the loss and injury resulting therefrom, have fallen upon Mr. Dull, and the amount is stated to be $500 and upwards.

On the hearing of this charge, the above facts were proved by the prosecutor. The prisoner's counsel contended, that, admitting what was thus sworn to be true, for the sake of argument, then the charge preferred against the prisoner would not be forgery, but simply embezzlement, and they therefore moved for his discharge.

The only question that arises for determination, is, do the facts make the crime forgery or embezzlement?—for the facts are proved to my satisfaction. Let us first examine the question of forgery. Forgery at common law—for this species of forgery is only a misdemeanor at common law, and not a felony, neither is it a statute-able offence—is defined, to be "the fraudulent making or alteration of a writing, to the prejudice of another man's rights;" 4 Bl. Com. East, in his Pleas for the Crown, defines it to be "a false making, a making malo animo of any written instrument, for the purpose of fraud and deceit." As East is a more modern writer than Blackstone, we will analyze the last definition, and see how it applies to the argument of the prisoner's counsel.

*Mr. Fairlamb & Judge Barton*, M'Dowell's counsel, have very ingeniously contended, that under the relations which existed between Mr. Dull as principal, and M'Dowell as his agent, the false entries, being made as such, certainly constitute an embezzlement as to M'Dowell; whereas, had the entries originally been genuine and true, and afterwards altered or forged, then the crime would be forgery. This is the substance of the argument.

The crime, as defined, consists of three ingredients. 1st. It must be a making; such making may or may not be an alteration, but an alteration may, neverthe-less, be a making within the meaning of the text; so that either a making, which implies an original making, or an alteration, which brings an alteration within its meaning, may be forgery, provided the second and last ingredients are present to constitute the offence entire. The 2d of these requisites consists of the fact, that

the making or alteration which must be fraudulent, should be of any written instrument; and 3d, and last, it must be for the purpose of fraud and deceit.

So that, under this well approved definition of the crime of forgery, the making of false entries in a book, whereby Charles Dull was defrauded of the sum of $500, is such a making malo animo of any written instrument for the purpose of fraud, as brings it within the definition.

In 2 Greenleaf's Reports 365, Meller c. j., decides in the case of Ames et al., that (citing the case of the King v. Ward, 2 lord Raymond 1461) the forging of any writing by which a person might be prejudiced, was punishable as forgery at common law. In that case, the prisoner was prosecuted, for falsely making and forging a writing, at common law. See also S. C. Str. 747.

In 3 Chitty 1022, we find that forgery at common law was only a species of fraud; and while Hawkins in his treatise seemed to be of opinion that it could only be committed of public documents, yet these views were overruled in Ward's case; and the author cites the case of Ames, above referred to, to this point: and in this connexion, in the case of Fitch, (1 Wendell 198) it was decided, that it is not now held to be essential to the offence of forgery in any case, that some one should have been injured; it was sufficient if the instrument forged, was or might have been prejudicial. Chitty farther remarks, that in general, every kind of writing seems to be a thing in respect of which forgery at common law may be committed. We find the following clear and satisfactory definition, by the same authority, of the crime of forgery: "Making a fradulent

15

insertion, alteration, or erasure, in any material part of a true document, by which another may be defrauded, is forgery;" 3 Chitty 1039. And again, "the very essence of forgery is an intent to defraud." Same 1039.

In the case of Commonwealth *v.* M'Kee, Addison Rep. 33, it is held that the forgery of any writing which may be prejudicial to another, is a forgery in common law.

In 2 Bin. 332, Tilghman c. j., says, it seems to have been the opinion of old writers on criminal law, that forgery at common law could not be committed with respect to any writing of a *private* nature, unless the same be under seal. But this point was fully investigated and decided to the contrary.

In 2 Russel on Crimes, we find the definition as given by the author, of forgery, to include both those of Blackstone and East. " The word making," adds the author in this last definition, "being considered as including every alteration of, or addition to, a true instrument."

In 2 East P. C. 852, the author says : " To forge (a metaphysical expression, borrowed from the occupation of the smith), means, properly speaking, no more than to make or form, but in our law it is always taken in an evil sense, and therefore forgery denotes a false making, which includes every alteration of or addition to a true instrument; a making malo animo of any written instrument for the purpose of fraud and deceit."

Not only the fabrication, (which is the proper legal definition of the word forge, for it is derived from the Latin, and in that language, may be either falsare

or fabricare) or false making of the whole of a written instrument, but the fraudulent insertion, alteration, or erasure, even of a letter in any material part of a true instrument, whereby a new operation is given to it, will amount to forgery. 2 Russ. 318.

The case of Rex v. Hart, Eng. Com. Rep. 32, 672, is conclusive on this subject. One Hart had a blank acceptance, which his principal had authorized him to fill up in £200; he filled it up in £500, and was convicted of the forgery. The question was reserved for the opinion of the court, who held the conviction right.

From these several authorities, it seems to be beyond question, that a false making, addition to, insertion in, or alteration of any true instrument of writing, with intent to defraud or prejudice another, is forgery at common law. If then, M'Dowell did make a false insertion of certain words and figures, in the true writing or book of original entries with intent to defraud his employer, he has committed forgery.

The relations between Mr. Dull and the prisoner can have no relation whatever to, or bearing on the nature of this offence. If, as his clerk or agent, he made a false writing, it was under circumstances the more calculated to deceive and defraud, because, being in his employ, the more confidence was reposed in him, and by abusing this confidence first, and then using it to defraud, he certainly aggravated the character of his offence. For if the doctrine of Chitty be true, "that the very essence of forgery is an intent to defraud," no clearer idea of this offence can be had, than the one derived from this view of the subject.

We will now examine the law of embezzlement. Embezzlement in England is a statuteable larceny—and under the various statutes passed at different times, the crime of embezzlement is defined, and its punishment provided for. By all these statutes, the crime consists in a felonious taking and conversion of the personal property of another, by one who held the position of servant, clerk, or some other similar relation to the party whose property was thus taken.

In other words, embezzlement in England is only another term for larceny, in those cases where the taking, as in larceny, could not be sustained, owing to the relation of the taker to the property taken, because the taker being an agent, or servant, or clerk, he had by virtue of this relation, a right of possession to such property. In order, therefore, to punish the crime, and obviate this difficulty, this kind of constructive larceny was made embezzlement, and that offence is described as a "statuteable larceny" by Chitty.

This offence can be defined thus, irrespective of the statutes; it is the fraudulent removing and secreting of personal property, with which the party has been entrusted, for the purpose of applying it to his own use. Embezzlement is a statuteable offence in Pennsylvania, so far as relates to public moneys; and under the factor law, the embezzlement or taking and appropriating of the goods of a consignor by a consignee or factor, is a statuteable misdemeanor and punishable as such.

The ingredients of embezzlement are nearly the same as of larceny. It must be an actual taking of property, fraudulently and feloniously. I am of opinion that there is no such offence as embezzlement in Pennsylvania,

except under the two statutes referred to. Purdon's Digest—titles Factor and Embezzlement.

It must be remembered, that the statute or section of a statute, passed in 1842, relating to "false pretences," taken in connexion with the other two statutes of which I have spoken, would include all classes of offences which otherwise would have been embraced in a common law embezzlement, if any such offence had existed in Pennsylvania.

In Pennsylvania we have the offence of constructive larceny known to our criminal law, and that would be effective in most cases commonly denominated, but erroneously, embezzlement.

The law of embezzlement, as applied to the facts of the case under consideration, would under no circumstances in my opinion, make the charge against M'Dowell, embezzlement. The property taken from Mr. Dull by M'Dowell, was taken by a false addition to a true writing made by himself—for he admitted, if Mr. Dull is to be believed, that he did take $80, and under a pressing necessity. See Nickelson case, MS., court G. S.

The taking, of whatever kind it may be, was effected by what I consider to be a forgery. If we had in Pennsylvania the various English statutes in force as to embezzlement, it might have been classed under such statutes, as a larceny, for it cannot be a larceny in Pennsylvania, unless a constructive larceny; but with this I have nothing to do. That charge is in the hands of a brother magistrate, and to be decided upon by him.

I have given this case a careful examination, and the result satisfies me, that David M'Dowell, by the testimony before me, did make such a false writing in the

15*

books of Dull, when he fraudulently made the words and figures, sworn to as false, for the purpose of deceiving and defrauding, as requires me to hold him to answer for a forgery at common law.

I therefore, order him to find bail in $1000 for trial at the next term of the court of quarter sessions, to be holden for the city and county of Philadelphia.

*C. Fallon, esq.*, for commonwealth.
*Fairlamb & Barton, esqrs.*, for defendant.