## The People v. Samuel L. Caton.

*Statute construed: Forged instrument: Deed: Mortgage.* A mortgage is included in the term "deed," as used in our statute (*Comp. L., 1857,* § *5803),* providing for the punishment of any person who shall utter and publish as true, any false, forged, altered, or counterfeit record, deed, etc., knowing the same to be false, etc.

*Uttering forged instrument.* To constitute an uttering of a forged instrument, it is not necessary that the instrument should have been actually received as genuine by the party upon whom the attempt to defraud is made; it is enough if it be offered as genuine, or declared or asserted by words or actions, to be good.

*Heard July 12. Decided July 13.*

PEOPLE v. CATON.

Exceptions from the Recorder's Court of the city of Detroit.

The testimony of Mr. Elwood, referred to in the opinion, was substantially as follows: I am secretary and treasurer of the Wayne county savings bank; I know the respondent; I saw him in said bank on March 8, 1872, when he applied to borrow two thousand dollars and proposed to secure it by mortgage on real estate; I told him I would make the loan provided the title was satisfactory to our board; he said the property was one hundred and sixty acres, well improved, in Plymouth, and owned by Robert Blackwood; I told him we would require an abstract of title; he furnished me one; I asked what use he was going to make of the money; he said Blackwood owed him, and was going to give him a mortgage for the amount; he called again once or twice that day; he took one of the bank's mortgage blanks, and at his request I filled up the mortgage blank with the description of the property, the term of years for which the loan was to be made, and the rate of interest; he also took a blank "application for a loan," and the names of two or three parties in Plymouth whom I wished to put a valuation upon the property; the next day, after the bank had closed, he called again, and I let him in.

The prosecuting attorney then asked the witness as follows:

Q. What happened then?

A. He laid on the table, in front of me, this mortgage, executed as it is now; also this blank application I had given him. The blanks were all filled out, and it was signed.

Q. The next afternoon he came and brought you these papers?

A. Yes, sir; he brought also an answer that I gave him to a party in Plymouth.

Q.  What is that party's name?

A.  Mr. Taft.

Q.  Do you know where that letter is?

A.  I handed it to the chief of police at the time of his arrest.

Q.  Is that the letter (showing witness a letter)?

A.  That is the letter he brought back, purporting to come from Mr. Taft.

Q.  To you?

A.  Yes, sir.

Q.  Then what passed between you after giving you those papers?

A.  I said to him that the bank was closed; it was too late to close up this transaction, and requested him to call in the morning; and he called around next morning.

Q.  Did he leave the papers with you?

A.  No, sir; he did not leave the mortgage.  He left the application, I think, and this letter, but the mortgage he took with him.

Witness further gave evidence tending to show that when respondent called next morning he was arrested, and that he, witness, had no further conversation with him, and that no papers were produced by the prisoner at that time.

*Dwight May, Attorney General,* for the People.

*Wilkinson & Post* and *Henry M. Cheever,* for the respondent.

COOLEY, J.

The prisoner was convicted on an information, charging that he "did utter and publish as true, a certain false, forged, and counterfeited instrument and writing for the payment of money, in the likeness and similitude of a mortgage"

of lands. It is objected that the information charges no offense; a mortgage not being among the instruments mentioned in the statute under which it is drawn.

The statute (*Comp. L.* § *5803*) provides that, "Every person who shall utter and publish as true, any false, forged, altered, or counterfeit record, deed, instrument, or other writing mentioned in the preceding section, knowing the same to be false," etc., shall be punished, etc.

It is not disputed that a mortgage, in the legal sense, is a deed, but it is insisted that in common parlance a distinction is taken between the two instruments; the term, *deed*, being applied to conveyances of land, which, in this state at least, a mortgage is not. And the argument is, that the word deed has been used in the statute in the sense in which it is commonly used and employed; or, at least, that the rules of strict construction applicable to criminal statutes would require us so to hold.

We are not prepared to yield our assent to this argument. The statute employs a general term which covers instruments given for a great variety of purposes, and it gives no indication of an intent to confine its operation to deeds of lands; much less to that class of deeds of lands which convey the legal title. There is abundant reason to believe, on the other hand, that the word is used in the broad legal sense in which it is understood at the common law; for, the purpose of the legislature has evidently been, to give, by the use of general words, such an enumeration of the instruments likely to be the subject of forgery as to embrace all the valuable writings, by the false making or altering of which innocent persons might be in danger of being defrauded. The section preceding the one on which the information is based, and to which it refers, enumerates a public record, certificate, return, or attestation of a public officer, *any* charter, deed, will, testament, bond or writing

obligatory, letter of attorney, policy of insurance, bill of lading, or discharge for money or other property, any acceptance of a bill of exchange, or endorsement, or assignment of a bill of exchange or promissory note for the payment of money, any accountable receipt for money, goods, or other property. We cannot enlarge a criminal statute by construction; neither, where the evident purpose is; to make it so comprehensive, are we at liberty to restrict it. "*Any deed*" will certainly include a deed of mortgage.

It is also objected that there was no evidence of the uttering and publishing, to go to the jury. We think that, on the testimony of Mr. Elwood, the jury would have been warranted in finding that a negotiation for the sale of the mortgage was entered upon with him, and that the forged paper was put into his hands as a genuine instrument, ready for his acceptance as such, had he been prepared then, on behalf of the bank, to close the transaction. And these facts, if found, we think, would have constituted an uttering.

To constitute an uttering, it is not necessary that the forged instrument should have been actually received as genuine by the party upon whom the attempt to defraud is made. To utter a thing, is to offer it, whether it be taken or not.—*Jervis, Ch. J., Regina v. Welch, 3 Den. C. C., 78 ; S. C., 15 Jur., 136.* It is to declare or assert, directly or indirectly, by words or actions, that it is good.—*Tilghman, Ch. J., Commonwealth v. Searle, 2 Binn., 339.* A receipt may be *uttered* by the mere exhibition of it to one with whom the party is claiming credit for it, though he refuses to part with the possession.—*Regina v. Radford, 1 C. & K., 707.* In *People v. Rathbun, 21 Wend., 528,* Cowen, J., says, "not only a sale or paying away a counterfeit note or endorsement, but obtaining credit on it in any form, as by leaving it in pledge,—*Rex v. Birkett, Russ. &*

*R. C. C., 86,*—or indeed offering it in dealing, though it be refused,—*Rex v. Arscott, 6 C. & P., 408; Rex v. Shukard, Russ. & R. C. C., 200; Rex v. Palmer, 2 Leach, 978,* —amount to an uttering and publishing." There are no decisions detracting from the force of these. We do not think it an important circumstance that it may have been contemplated that the board would be consulted by Elwood before closing the negotiation.

None of the other exceptions which were taken, seem to us to require special discussion. There was nothing apparent on the face of the mortgage which would invalidate it, and the rulings of the recorder were manifestly right. It should be certified to him as the opinion of this court that he should proceed to judgment.

The other Justices concurred.