## G. H. JOHNSON *v.* THE STATE.

1. UTTERING FORGED INSTRUMENTS. — Though, as held in *Rogers* v. *The State,* 8 Texas Ct. App. 400, an official instrument, such as an officer's certificate of the acknowledgment of a deed, was not legally susceptible of forgery, in this State, prior to the act of 1876 "to provide for the detection and conviction of all forgers of land-titles," it is nevertheless an offence to knowingly utter as true a fabricated certificate of that nature, though fabricated before the passage of said act of 1876. See the opinion *in extenso* on this subject.

2. TITLE OF ACT. — All the provisions of the said act of 1876 are germane to its title, and there is nothing therein which contravenes the constitutional requirement that an act shall embrace but one subject, and that it shall be expressed in the title of the act.

3. EVIDENCE. — The Code of Procedure enacts that the common-law rules of evidence shall govern in criminal trials, when not in conflict with statutory law, and also that the statutory rules of evidence in civil suits shall, as far as applicable, govern in criminal trials, when not in conflict with the Codes. But when evidence is offered by virtue of either of these provisions, the conditions precedent to its competency must be complied with.

4. SAME — PRACTICE. — In a trial for the utterance of a forged certificate of acknowledgment, it was shown that the certificate and the accompanying deed were last seen in the possession of the defendant, and that he had been notified to produce them; whereupon the State was allowed, without further preliminary, and over objection by the defence, to prove that the deed and certificate had been duly recorded, and to introduce as evidence a certified copy from the record. *Held,* error. To make the copy evidence at common law, proof was necessary that it was a true copy of the originals; and to make it evidence under art. 2257 of the Revised Statutes, the prerequisites thereof, in respect of affidavit, filing, and notice, should have been complied with.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

Early in January, 1877, according to the evidence, the defendant, as attorney in fact of J. L. Smith, conveyed to Mrs. H. C. Collins, wife of F. F. Collins, a section of land in Palo Pinto County, Texas, in part consideration for a house and lot in the city of Dallas, conveyed by Collins and wife to the wife of the defendant. As evidence of Smith's

title to the land in Palo Pinto County, the defendant exhibited to Collins an instrument purporting to be a deed from Henry Blood to Joseph L. Smith, of San Francisco, California, for several tracts of land, and among them the section conveyed to Mrs. Collins. The deed from Blood to Smith purported to have been made on March 27, 1851, in Harris County, Texas, and appended to it was a certificate of Blood's acknowledgment, purporting to be the official act of William R. Baker, clerk of the County Court of Harris County, and bearing date the said twenty-seventh day of March, 1851.

The indictment in this case was presented in May, 1878, by the grand jury of Travis County, acting by authority of the act of 1876 "to provide for the detection and conviction of all forgers of land-titles," and charged that the defendant, on January 8, 1877, "wilfully, feloniously, and without lawful authority, and with the intent to defraud, did knowingly utter, publish, use, and pass as true and genuine, a certain false and forged instrument in writing, purporting to be the act of another person," to wit: the said certificate of acknowledgment appended to the deed of Blood to Smith. The case came to trial in the District Court of Travis County in June, 1879, and resulted in the conviction of the defendant and the assessment of his punishment at a term of five years in the penitentiary.

The evidence in the case is elaborate, and was elicited from many witnesses, documents, and letters of the defendant found in the possession of Dr. T. E. Tullis, when the latter was arrested, some time before the proceedings against the defendant. The opinion of this court indicates such parts of the evidence as are involved in the rulings.

*Carleton & Morris* and *Joe H. Stewart*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

CLARK, J.  It is assumed by counsel for appellant, in argument, upon the principle announced in *Rogers* v. *The State*, decided at the present term ( 8 Texas Ct. App. 400), that this conviction is invalid because the instrument which appellant is charged with uttering was not legally susceptible of forgery prior to the act of July 28, 1876, entitled "An act to provide for the detection and conviction of all forgers of land-titles" (Laws 1876, chap. 61) — the instrument upon which the forgery is assigned, and which, it is alleged, was uttered by appellant, being a certificate of acknowledgment to a deed of conveyance bearing date March 27, 1851, and no evidence having been offered by the prosecution tending to establish its forgery subsequent to July 28, 1876.  To state the proposition more succinctly, it is asserted that, as forgery could not be committed of a certificate of acknowledgment prior to the act mentioned, in the absence of proof that such an instrument was forged subsequent to said act, a conviction cannot be sustained for uttering it, although it be in fact false and forged.

Notwithstanding the two offences of forgery and of uttering a forged instrument are treated connectively in all treatises upon criminal law, and are found together in all codes, yet they are distinct offences, and rest upon essentially different principles.  Forgery, under our law, is the making, without lawful authority, and with intent to injure or defraud, any false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would, if the same were true, have created, increased, diminished, discharged, or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever ; or it is the alteration of an instrument in writing, then already in existence, by whomsoever made, in such manner that the alteration would, if it had been legally made, have created, increased, diminished, discharged, or defeated any pecuniary obligation, or would have transferred or in any manner have

affected any property whatever. Penal Code, arts. 431, 432. The offence of forgery is complete by the single act of making or alteration, with a fraudulent intent; and the establishment, upon trial, of these elements determines affirmatively the guilt of the perpetrator, if the instrument be one which, under the laws in force at the date of such making or alteration, is susceptible of forgery.

An uttering a forged instrument under our law is the knowingly passing as true, or attempting to pass as true, such forged instrument. Penal Code, art. 443. It is the using, or attempt to use, in a transaction of a business nature, a false instrument in writing, whether wholly manufactured or only altered, knowing that the same speaks falsely upon its face, and is not in fact what it purports to be, and is calculated and intended to effect a fraud upon the pecuniary or property rights of another. To utter and publish is to declare or assert, directly or indirectly, by words or by actions, that an instrument is good and valid, as it purports to be; that it was, in truth, signed by the grantor; that it was intended to affect the particular property as specified, and that the legal incidents attendant upon its execution were in fact complied with. *The Commonwealth* v. *Searle*, 2 Binn. 339; *The People* v. *Caton*, 25 Mich. 388.

It is noticeable that in the body of the statute upon which this prosecution is based it is not made essential that a *forged* instrument shall be uttered, to bring the person charged within the penalty of the statute, but the instrument may be a false instrument, or a forged, or altered, or counterfeited instrument, and in either event the penalty may be justly visited. The indictment, it is true, charges that the instrument was *false and forged;* but that is permissible pleading, and under it the evidence need only sustain one of the allegations. Bishop's Stat. Cr., sect. 244; *Hart* v. *The State*, 2 Texas Ct. App. 43; *Phillips* v. *The State*, 29 Texas, 233. The evidence tends necessarily to the establishment of the falsity of the instrument alleged to have

been knowingly passed as true by the appellant, and this is a conclusive answer to the argument upon this point.

But we do not wish to be understood as intimating a different opinion in case the simple falsity of the instrument was not entirely sufficient for the purposes of conviction. Because an indictment cannot be sustained for an alleged forgery of a certificate of acknowledgment in 1873, as was declared in Rogers' case, it does not follow that a prosecution cannot be maintained for knowingly passing as true, in 1878, a similar instrument made in 1851. If such an instrument was in fact manufactured in the year last named, with a fraudulent intent, so long as it continued in existence it was a forgery in fact, if not in law; and if it was in existence on July 28, 1876, and was clearly provided for by the act of that date, no legal reason is perceived, nor has any been adduced in argument, why the law, immediately upon its passage, did not stamp such instrument with the impress of legal forgery, so as to subject any person who might thereafter utter it to the pains and penalties affixed for uttering a forged instrument. It was said in Ham's case that the act of July 28, 1876, did not change or affect the definition of forgery as contained in the Code, and that its object was not to define a new offence, or a new class of offences, but was, as stated in its title, " to provide for the detection and conviction of all forgers of land-titles." 4 Texas Ct. App. 645. The object of the law, and whether it defined new offences, were questions not before the court nor under discussion in that case. The single question there was whether or not, upon a prosecution for forgery of a land-title or a deed, the legal definition of forgery was a part of the law applicable to the case, and necessary to be given in charge to the jury, and it was very properly determined in the affirmative. The expression of the learned judge who prepared the opinion is perfectly accurate in the sense intended. The act in question did not make any new offence of forgery, but left the law of that offence as it al-

ready stood upon the statute-book, and merely amplified its scope and purview by bringing within it many acts which before that time were not punishable as forgeries. The original law of forgery was simply enlarged and rendered more comprehensive and specific, but without affecting, or intending to affect, the elements of the offence as hitherto well known and defined.

It is urged, however, that if it was the purpose of this statute to do more than to provide a system of procedure in cases of forgery of land-titles, then the law is unconstitutional in so far as such purpose is concerned, because such purpose is not expressed in its title, and the law embraces more than one subject, which is likewise not expressed. It will suffice for a disposal of this objection to say that the title of the act is broad enough to cover and include any provision found therein having for its object the detection and punishment of this species of forgery. Prescribing a penalty for an offence by written law, as well as defining the offence as the law then stood, were essential prerequisites to a conviction for the offence, and if the subject of the bill as expressed in its title was to provide for the conviction of all forgers of land-titles, we cannot well understand why, under such a title, it was not competent to prescribe the offences and punishments as well as the mode of procedure necessary to be followed in securing convictions, especially as some of the offences were not otherwise provided for by law. *English* v. *The State*, 7 Texas Ct. App. 171; *Albrecht* v. *The State*, 8 Texas Ct. App. 216. A fundamental and primary object of all penal legislation is to secure the punishment of all infractions, which is but another mode of expressing the same idea conveyed by the words of the title under consideration. The constitutional objection is equally untenable with the main proposition.

In the progress of the trial, the prosecution offered in evidence a certified copy of the deed of conveyance from Henry Blood to Joseph L. Smith, of date March 27, 1851,

together with the purported certificate of acknowledgment taken before W. R. Baker, clerk of the County Court of Harris County, and upon which certificate forgery was assigned, which certified copy of deed and certificate was from the record thereof made upon the deed-records of Palo Pinto County, and attested by the certificate and seal of office of the keeper of said records. To the reading of this paper in evidence the defence interposed several objections, among which were the following : —

3. Because the plaintiff had not filed the said paper among the papers of this cause, nor exhibited it to defendant until it was offered in evidence.

4. Because it had not been shown that said paper was a true and correct copy of its purported original.

5. Because there is no legal authority to authorize the admission in evidence of a certified copy, unless the same shall be shown to be a true and correct copy.

6. Because said paper had not been shown to be an examined or true copy of the deed to which the alleged false and forged certificate is attached.

It was shown that the original deed from Blood to Smith had been last seen in the possession of the defendant, and timely notice had been given his counsel to produce it upon trial. The objections were overruled and the paper was permitted to be read in evidence, without further authentication ; to which action of the court an exception was duly saved.

It is provided in our Code of Criminal Procedure " that the rules of evidence known to the common law of England, both in civil and criminal cases, shall govern in the trial of criminal actions in this State, except where they are in conflict with the provisions of the Code, or of some other statute of the State ;" and that " the rules of evidence prescribed by the statute law of this State in civil suits shall, so far as applicable, govern also in criminal actions, when not in conflict with the provisions of the two Codes." Pasc. Dig., arts. 3103, 3104.

At common law, a deed or other instrument of like nature is admissible in evidence only after proof of its execution, by a subscribing witness, if it was executed with this formality, and the testimony of such witness is accessible, or by some other primary evidence; or by secondary evidence, in case the instrument does not come within some well-defined exception which obviates the necessity of proof. Proof by an examined copy, of the contents of an original document which is lost or destroyed, or in the possession of the opposite party, who fails to produce it upon notice, is an established species of secondary evidence, and frequently resorted to in the trial of causes. A mere notice to produce, however, does not make the instrument, or a certified copy thereof, evidence. Whart. on Ev., sect. 156. The modern tendency seems to be to adjudge that certified copies of deeds from the authorized registry are competent as proof of the originals as well as of the registry (1 Greenl. on Ev., Redfield's ed., sect. 485, note); but with us the principle is controlled and restricted by statute, and, without a compliance with the statutory conditions, neither the original nor a copy, no matter how certified, can be deemed competent without the aid of other proof. In civil causes a party desiring to use in evidence a deed or other instrument which is permitted or required by law to be registered, and which has been duly registered, may obviate proof of its execution, by filing the instrument among the papers of the suit at least three days before the commencement of the trial, and giving notice of such filing to the opposite party or his attorney of record. Or, if the original cannot be procured, a certified copy from the record may be filed, accompanied with the proper affidavit; and, in the absence of an affidavit by the opposite side that it is believed to be a forgery, the original or the copy may be read in evidence for any purpose. Pasc. Dig., art. 3716.

It is claimed by the prosecution that this statute is not applicable in criminal cases, but neither reason nor authority have been advanced tending to establish its inapplicability,

and many cases may be readily conceived wherein it would be clearly applicable. It is not perceived why either the State or the defendant, in a criminal prosecution, ought to be deprived of its privileges, unless some substantial reason should exist therefor. It is true, the statute was designed to obviate the necessity for proof of the execution of an instrument, and contemplates that when the instrument is offered in evidence it shall be free from the taint of forgery; and it may not have been contemplated by the framers of the law that it would ever be applied in a prosecution for forgery. And yet its scope may have been materially enlarged by subsequent legislation, so as to make it apply in contingencies never originally contemplated.

Without undertaking to determine definitely its applicability in all criminal cases, it is sufficient for our present purpose to say that when a deed or copy is offered and read in evidence on the trial of any case, the procedure must be authorized by some law, statute or common, else its admission is error. If its admissibility in evidence is urged upon the faith of a statute, it must be shown that the statutory conditions have been complied with, and if upon principles of the common law, a compliance with the rules of that system is equally essential. The competency of evidence must be according to the course of the one or the other, and if supported by neither, the evidence must be rejected as incompetent.

Applying these rules to the particular question before us, it is apparent that the instrument as used was inadmissible in evidence. It had not been filed with the papers of the suit within the time prescribed by law, and due notice thereof given to the opposite party, nor had affidavit been made that the original could not be procured. Hence its admission was not justified by statute. No witness testified under oath to its correctness as an examined copy, nor is it made to appear that the copy was admissible under any of the well-known rules of the common law. If it was the in-

tention of the prosecution merely to prove a record of the deed, then the evidence was competent for that purpose; but if the intention was, by means of the record, to prove the contents of the original instrument, in the possession of the defendant, then the testimony of the clerk or his deputy with whom the deed was filed, and by whom it was recorded, or that of some other competent witness, was essential to give the copy the verity and effect of an examined copy. *Henderson* v. *The State*, 14 Texas, 510. That the latter was the intention is manifest from the record. It may have been an easy matter for the prosecution to have proved by the witness Collins, or the witness Baker, the contents of the certificate, or its substance, but this seems not to have been attempted. Their statements refer to the certificate in a general way, and it is pronounced a forgery; but evidently the State relied wholly upon the certified copy of the certificate for evidence of what the contents of the forged certificate really were, and not upon any other testimony in the case; and the conviction is presented to us with nothing to indicate, in a legal way, the exact instrument found to have been forged, and which, for aught that legally appears, may have been so radically void and defective as not to support a conviction for uttering it. The objections of the defendant should have been sustained, and the instrument rejected for the purpose offered and used.

The remaining errors assigned are not deemed tenable, or likely to arise upon another trial. The charge of the court seems to have sufficiently set forth the law applicable to the case, when taken in connection with the first instruction requested by the defendant, and given with a qualification or addition; and the remaining instructions asked and refused were not applicable to the case in the form presented. The case was not one resting wholly upon circumstantial evidence, and it was only requisite that the evidence should have satisfied the jury of the guilt of the defendant beyond

a reasonable doubt, as given in charge by the court, and not "beyond the possibility of a reasonable doubt," as asked by the defendant.

Because of the admission of incompetent evidence, as indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*