### WILLIAM J. PHILLIPS v. THE STATE.

Art. 399 *a* of the Criminal Code reads as follows: "If any person shall wrong-
fully destroy, mutilate, deface, injure, or remove any tomb, monument,
gravestone, or other structure, in any place used or intended for the burial
of the dead, or any fence, railing, or curb for the protection of such struc-
ture, or any inclosure for any such place of burial, or shall wrongfully in-
jure, cut, remove, or destroy any tree or shrub growing within any such
inclosure, he shall be punished by imprisonment in jail not exceeding six
months, or by fine not exceeding $500." (Paschal's Dig., Art. 2031.) The
indictment charged the defendant with removing and destroying the fence,
&c. This is always proper where a statute makes two or more distinct
acts, connected with the same transaction, indictable, each one of which
may be considered as representing a stage in the same offense.

There is no repugnancy between the act of removing and that of destroying
a graveyard. The former includes the latter.

The Code of Criminal Procedure does not contemplate that a general demurrer
to an indictment, or a general exception, which does not notify the court
whether the defect of the indictment is one of form or one of substance,
shall be heard by the court. (Paschal's Dig., Art. 2949, Note 733.)

If the offense be charged substantially in the language of the statute, so as to
put the defendant upon notice of the particular charge which he is called
on to answer, and he could plead his acquittal or conviction against another
indictment, it is sufficient.

Where a man does an act with the intent which the law forbids, it will not
avail him that he also intended an ultimate good. It is enough that every
one must know what the law forbids.

That the burying-ground was better protected by the new fence than the old
is no defense.

APPEAL from Wharton. The case was tried before Hon.
BENJAMIN SHROPSHIRE, one of the district judges.

The appellant was indicted in these words: "That Wil-
liam J. Phillips and Jim Phillips, on the 25th day of
March, A. D. 1856, with force and arms, in the county
aforesaid, did then and there wrongfully destroy and re-
move the fence from around a certain graveyard near the
town of Wharton, in said county and State, which said
fence was placed around said graveyard for its protection
and inclosure."

The defendants moved to quash the indictment, because

it was insufficient and charged no offense known to the law. The motion was overruled, and it was proved that the graveyard had been inclosed for some years by public subscription; that the fence was dilapidated and in a bad condition previous to the change made by the defendants, so much so, that stock were accustomed to break in; that the appellant, being the agent of Mrs. McWillie, the owner of the adjoining plantation, removed one string of the grave-yard fence, so as to take in about five more acres of land; but the inclosure was then repaired, and a better fence made, so as to keep out the stock. It was proved that one Kinchiloe had formerly owned the land, which he had given for a graveyard for the use of the town of Whar-ton. In removing the fence the appellant caused the graveyard to be partly within the cotton-patch of Mrs. McWillie.

The State having closed with this evidence, the defend-ant proved that he had applied to the county court for permission to remove the division fence between the Mc-Willie plantation and the graveyard. The court refused to take jurisdiction of the matter. He then proved, by a diagram, that by removing the fence he threw five acres more into the graveyard inclosure; but cultivated the five acres in cotton, having made a good fence around the whole inclosure. The inclosure was proved to have been very much improved. One of the subscribers to the grave-yard swore that the appellant applied to him for permis-sion to make the change, and he gave his consent, stating at the same time that he thought no one would object.

The court instructed the jury, that if they believed that the defendants, or either of them, did wrongfully remove the fence which did inclose the graveyard or burial-ground of the town of Wharton, they would find them guilty, &c., and refused to instruct, that if the change made in remo -ing the division fence repaired and improved the inclosure they would acquit.

The jury found William J. Phillips guilty, and acquitted the freedman, Jim Phillips.    William J. Phillips appealed.

There was a motion for a new trial overruled, which is sufficiently noticed in the opinion of the court.    The points in it arose upon other rulings.

*John T. Harcourt,* for appellant.—The first assignment of error calls in question the ruling of the court on the motion to quash the indictment.

The indictment is believed to be defective, because it is double, and repugnant, and does not pursue the language of the statute with sufficient exactness.    (Penal Code, Art. 399*a*.)

It will be observed that two distinct offenses are charged in the bill.    The first is, that the defendant destroyed the fence; the second, that he removed it.

"A count in an indictment which charges two distinct offenses is bad, and the defendant, on a motion to quash or demurrer, can defeat it."    (Whart. Crim. Law, 139; Miller v. State, 5 How., 250.)

"When one material averment in an indictment is contradictory to another, the whole is bad."    (Whart. Crim. Law, 142.)

The destruction of the fence completes the crime, and, if destroyed, it could not be removed.    It is an inconsistent averment.

It is apparent that the offense intended to be charged was, that the defendant "wrongfully removed the inclosure from a place used for the burial of the dead, near the town of Wharton."    These are the "plain, intelligible words" contemplated by article 395, Code of Criminal Procedure.

"An indictment which may apply to either of two definite offenses, and does not specify which, is bad."    (Whart. Crim. Law, 120, 121, 132.)

2. The court erred in overruling the motion for new

trial. It is contended that the charge of the court was erroneous, because it did not explain to the jury what would constitute a wrongful removing of the fence. This was the technical averment which formed the gist of the prosecution.

"The intent with which an act is done is often made a material ingredient in the offense, as defined either by the common law or by statute."

"Where an evil intent, accompanying an act, is necessary to constitute such act a crime, the intent must be alleged in the indictment and proved. (1 Arch. Crim. Prac. and Plead., 87, note; The People v. Petit, 3 Johns., 511; Fergus v. State, 6 Yerg., 334; Coffee v. State, 3 Yerg., 283.)

We conclude that it was the duty of the court to define what was the technical, legal import of the term wrongful, and to submit to the jury the material practical issue, whether the act was done with a guilty evil intent, or for some innocent laudable purpose.

The court erred in refusing to give the charge asked by the defendant. This charge embodied the law applicable to the facts of the case, and would have enabled the jury to acquit the defendant.

The fence was a bad one, before the change was made, so much so, that it was not in fact an inclosure, as it did not keep out the stock. The defendant made it an "inclosure" which did protect the burial-ground. The fence, as changed, did surround and shut in the graveyard, and it was not in any just sense a removing of the inclosure.

The fifth ground of the motion for a new trial is submitted with a single remark. The jury intended to fine the defendant $100. The court, *a quo*, has decided that the United States currency is not a legal tender, and this fine must be paid in coin.

3. The third assignment of error is, that the verdict and judgment are contrary to law and the evidence.

We think it has already been shown that the verdict and judgment are contrary to law, and an inspection of the statement of facts will show that they are not warranted by the proof.

There was no evidence conducing to show that the act was done with a wrongful or evil intent. It devolved upon the State to show this offensive guilty intent.

The defendant fully exculpated himself by the testimony of the witnesses, Horne and Davis, who proved that the defendant applied to all the parties, whom he supposed had any control over the subject, for permission to make the proposed change, and no objection was urged by the county court. Permission was granted him by Mr. Davis. The proof negatives all idea of a guilty evil intent. It abundantly shows that the defendant labored under the mistaken belief that he had obtained the consent of parties, which would exonerate him from all liability for extending the inclosure. He had sought to obtain this consent from all the parties having, as he supposed, any control of the subject-matter; and having obtained the consent of Mr. Davis, who told him he thought there would be no objection, he acted under this mistake, and is excusable, under articles 47 and 48 of the Penal Code.

We close the argument with an extract from the able opinion of Judge Kane, in a note to Wharton's Criminal Law, 116.

"The law secures to every man who is brought to trial on a charge of crime that the acts which constituted his alleged guilt shall be set forth with reasonable certainty in the indictment which he is called upon to plead to. This is his personal right." *   *   *

*F. C. Hume,* for the State.—This is an indictment framed under Art. 2031, Paschal's Dig., (O. & W. Dig., Art. 399 *a*,) for removing inclosure around a graveyard. Motion to quash overruled, and verdict rendered against defendant.

Motion made for new trial and overruled; whereupon defendant appeals, and assigns three reasons for error:

1. The court erred, as shown by the bill of exceptions.

2. The court erred in overruling motion for new trial.

3. The verdict and judgment are contrary to law and the evidence.

1st. The bill of exceptions is based on the rule of the court on the motion to quash, which motion sets forth the legal insufficiency of the indictment, and that it charged no offense known to the law. These objections are dispelled by reference to Paschal's Dig., Art. 2031, O. & W. Dig., Art. 399 *a*, and the indictment.

2d. Motion for new trial was made on six several assigned errors, one of which has already been considered.

3d. There appears no error in the charge of the court. It follows that article under which the indictment was framed. (Paschal's Dig., Art. 2031; O. & W. Dig., 399 *a*.)

4th. The defendant asked the court to give the following instruction to the jury: "If you believe, from the evidence, that the change made in removing the division fence around the inclosure did repair and improve the graveyard inclosure, you must find the defendant not guilty." Of course this instruction was refused, as the effect of removal could enter no way into the consideration of the truthfulness of the charge, that being the only thing concerning which any instruction from the court was proper.

5th. Under the article already quoted there can be no doubt as to the requirements of the law, and it is believed the statement of facts is entirely sufficient to warrant the judgment.

6th. The last two reasons for new trial are, first, the jury assessed and agreed upon the amount of the fine, and then, on suggestion of one of their number, changed the amount, second, because of newly-disclosed evidence.

It is difficult to apprehend why counsel should attempt to employ such objections as these, for no improper influ-

ences were exerted on the jury. The communication which changed their verdict came from one of their own body, and was made and acted on before any report of their verdict had been made to the court. The "newly-disclosed evidence" is simply the affidavit of a juror, that their original agreement (for it could not be called a verdict until delivered in the court) had been modified by the communication from one of their number, as above stated.

These objections, depending absolutely one upon the other, and neither based on any principle of law or article of the statute, were properly overruled by the court.

WILLIE, J.—The indictment in this case charges that the appellant did "wrongfully destroy and remove the fence from around a certain graveyard near the town of Wharton, in Wharton county, which said fence was placed around said graveyard for its protection and inclosure." A general demurrer to the indictment was overruled by the court below, and the appellant was convicted of the offense, and fined $150. A motion for a new trial was made, based upon several grounds, all of which it will not be necessary to notice. Those worthy of consideration are: That the court erred in charging the jury, and in refusing the instructions asked by the defendant; and that the verdict was contrary to law and the evidence. This motion was overruled.

The proof showed that the inclosure around the graveyard contained about five acres, and was in a dilapidated condition; that it adjoined a plantation of Mrs. McWillie, for whom defendant was agent; that defendant removed one string of the fence around the graveyard, thereby changing the fence so as to take into the enclosure about five more acres of land with the McWillie plantation, and the inclosure was repaired, and a better fence made, so as to keep out stock. The fence, however, between the graveyard and the McWillie plantation was never replaced by

him, and the removal of the fence threw the graveyard into the same inclosure with a cotton-patch belonging to Mrs. McWillie. The graveyard was the common burial-ground for the town of Wharton. Three weeks previous to removing the fence defendant applied to the county court of Wharton county for permission to remove this fence, but they decided that they had no authority to grant it. He also applied to a person who had subscribed to the building of the fence for permission to remove it, who gave his consent, and told defendant he did not think there could be any objection to the proposed change. It was fully proved that the fences around the graveyard had been very bad, and that cattle and horses were constantly getting in, but that, after removing one line of the fence, defendant repaired the other three, so as to put them in a much better condition.

The errors assigned are, as to overruling the motion to quash the indictment; overruling the motion for a new trial; and because the verdict and judgment are contrary to law and the evidence.

The only ground for quashing the indictment insisted upon in this court is, that it is double, charging the defendant with both ruining and destroying the fence. The statute is: "If any person shall wrongfully destroy, mutilate, deface, injure, or remove, any tomb, monument, grave-stone, or other structure, in any place used or intended for the burial of the dead, or any fence, railing, or curb for the protection of such structure, or any inclosure for any such place of burial, * * * he shall be punished," &c. (Penal Code, Art. 399a.)

The indictment charges conjunctively acts constituting the offense, which are stated disjunctively in the statute. This is always proper and allowable, where a statute makes two or more distinct acts, connected with the same transaction, indictable, each one of which may be considered as representing a stage in the same offense. Thus, it is prop-

er to charge, in the same count, that a defendant set up a gaming-table, and also that he kept a gaming-table, and induced others to bet upon it, although these are distinct offenses. (Whar. Am. Crim. Law., 141; Hinkle v. Commonwealth, 4 Dana, 518.) And where a statute used the disjunctive language, "burned or caused to be burned," and the indictment charged the offense in the conjunctive, "burned and caused to be burned," the allegation was held sufficient. (Whart. Am. Crim. Law, 135; State v. Price, 6 Holst., 215. See also 3 Chitty's Crim. Juris., 1053, 1054, 1056, 1057; Archbold's Crim. Plead., 25, 189, 202, 343; Starkie, 271.)

There is no repugnancy between the acts of removing and that of destroying the inclosure around a graveyard. The former, in fact, may be considered as including the latter, since the act of removal would destroy the fence so far as it was useful in protecting the burial-ground from the incursion of trespassers.

A more serious objection to the indictment is, that it does not describe with sufficient certainty the graveyard which was the subject of the offense. This objection is not urged to it either by special exceptions in the court below, or by argument in this court, and we might possibly refuse to notice it, as not being reached by general demurrer.

Mr. Justice Bell, in the State v. Schoolfield and others, dicided in 1861, says that the Code of Criminal Procedure does not contemplate that a general demurrer to an indictment, or a general exception, which does not notify the court whether the defect of the indictment is one of form or one of substance, shall be heard by the court. And that, although the indictment in that case might be defective, yet that no defect was pointed out in such a manner as to authorize the court to consider it. (Appendix, *post.*)

We are of opinion, however, that the indictment would be good in this respect, even upon special exception. It charges the offense substantially in the language of the

statute; it puts the defendant fully upon notice of the particular charge which he is called upon to answer; and he could plead his acquittal or conviction under it in bar of any future prosecution for the same offense. Our courts have never required such a minute description of an offense in an indictment as to entirely supersede proof of its identity where the judgment is pleaded in bar of a second prosecution. (Cochran v. The State, Galveston T., 1863,) [26 Tex., 678.] Hence, in an indictment for playing cards in a house for retailing spirituous liquors, it is not necessary to state the name of the occupant of the house. (Prior v. State, 4 Tex., 383.)

And it has never been required that an indictment for the above offense should identify the particular place in which the playing is charged. (Sublett v. State, quoted in Cochran v. State, above cited.)

There can be no reason for requiring greater strictness and particularity of description in the present case. Had the graveyard been further described, by alleging that it belonged to any particular church or society, or by its distance and direction from the town of Wharton, these would have been mere matters of surplusage, which it was unnecessary to prove. In the case of Commonwealth v. Cooley, 10 Pick., 37, the indictment alleged, that the defendant disinterred a dead body, which had been interred in the common burying-ground in Greenfield, belonging to the first congregational parish in said Greenfield. The State failed to prove that the burying-ground belonged to the above parish; but the court held, that the allegation as to the ownership was unnecessary, and as such there was no necessity to prove it.

The indictment in the present case follows the approved form used in some of the other States where similar statutes exist. Thus in Massachusetts, the statute of 1841, ch., 114, § 6, enacts, that if any person shall willfully destroy, deface, or injure any tree, shrub, or other ornament,

placed within the limits of any cemetery, he shall be punished by fine, &c.

The form of indictment used in that State, under this statute, charges that the defendant, with force and arms, at S, in the county of E, one willow tree, of the value of $5, of the property of one J W, placed within the limits of a certain cemetery, situate at S, in the county of E, unlawfully, willfully, and maliciously did deface, injure, and destroy, &c. (Davis' Crim. Justice, 366, 367.)

The allegation that a graveyard was situated near a town is equally as certain as one charging that it was at the town. The court did not err in overruling the motion to quash the indictment.

The only ground taken by the appellant to sustain his second and third assignments of error is, that the removal of the fence took place without any wrongful intent on his part; that the court should have charged the jury as requested by him; that if the change made in removing the division fence around the inclosure did repair and improve the graveyard inclosure, they must find the defendant not guilty; and that, as that fact was fully proved, he should have been acquitted.

It is a well settled principle of law, that when a man does the thing prohibited, with the intent which the law forbids, it will not avail him that he also intended an ultimate good; as, on an indictment for obstructing a road, that he has opened a better way. (1 Bish. Crim. Law, § 250.) And that, if a man intends to do what he is conscious the law, which every one is conclusively presumed to know, forbids, there need not be any other evil intent. (1 Bish. Crim. Law, § 252.)

The fence was removed in this case without the consent of any person or persons authorized to give such permission, and was therefore wrongful. The burying-ground may have been better protected after the division fence between it and Mrs. McWillie's plantation was removed; still

those who were interested in the graveyard might not have preferred to have it turned into the same inclosure with a cotton-patch. The defendant must have been aware that the persons to whom he applied had no control over the graveyard, and that it was not in his discretion to interfere with the manner in which it was already inclosed, though, in some respects, and in the opinion of some persons, it had been improved by the change.

The facts proved were sufficient to warrant a conviction, and the judgment is

AFFIRMED.