## J. E. WEST *v.* THE STATE.

1. INDICTMENT. — The business card of the printers of the form upon which the indictment is drawn is no part of the indictment, nor is it an infraction of the rule that indictments shall commence, "In the name and by the authority of the State of Texas."

2. GRAND JURY. — "Good and lawful men of the State of Texas, and county of Caldwell," sufficiently characterizes the grand jury, if the succeeding portions of the indictment show that it was the act of the grand jury of that county.

3. SAME — OATH — PROCESS. — The law does not confer upon one charged with crime the right to call in question the form of oath administered to the grand jury, or the process upon which they were summoned.

4. EXCEPTIONS TO INDICTMENT. — When an indictment has been preferred, the accused is entitled to have it set aside on either of the grounds mentioned in art. 483 of the Code of Criminal Procedure, and upon no other; and, as to *substance*, he may except upon either of the three grounds set out in art. 487 of the Code of Criminal Procedure, and no other. Art. 488 of the Code of Criminal Procedure sets out the only two grounds upon which exceptions as to *form* may be taken. See the opinion for discussion of leading cases on this subject.

5. ARREST OF JUDGMENT. — Upon motion, judgment will be arrested upon any ground which would be good upon any exception to the indictment or information for any substantial defect therein; but a mere formal objection would not be reached by motion in arrest of judgment.

6. OWNERSHIP — CASE STATED. — The indictment alleged the ownership of the sheep stolen to be in C., and the possession in P., who held the same for C. The proof showed that recently before the theft, C., the owner of the sheep, turned them over to P., who was to care for them on shares until a specified time. It was shown that after P. obtained the possession, and before the theft, some of the ewes had lambs, and it was claimed by the defendant that therefore the sheep were the partnership property of C. and P., and that the ownership was improperly laid in C. alone. *Held*, that the indictment properly alleged the ownership in C.

7. EVIDENCE. — See statement of facts for evidence *held* sufficient to sustain a conviction for theft, under such an allegation of ownership.

APPEAL from the District Court of Caldwell. Tried below before the Hon. L. W. MOORE.

Appellant was indicted for the theft of two hundred and fifty head of sheep, and, upon being tried and convicted,

his punishment was assessed at four years in the penitentiary. Various objections were urged to the indictment upon the trial, and, that the questions raised may be better understood, the entry of the presentation of the indictment, and the indictment itself, are set out in full, except the printers' advertisement on the indictment.

"Came the grand jury, a legal quorum being present, and returned into open court the following indictment, to wit: —

"The State of Texas ⎞ Theft of sheep.
(No. 1722) v.       ⎟ Presented on the 25 March, 1879.
    J. E. West.    ⎠

"The State of Texas, county of Caldwell. In the District Court of said county, March term, A. D. 1879. In the name and by the authority of the State of Texas: The grand jurors, good and lawful men of the State of Texas, county of Caldwell, duly tried on oath by the judge of the District Court of said county touching their legal qualifications as jurors, elected, empanelled, sworn, and charged to inquire into, and true presentment make of all offences against the penal laws of said State, committed within the body of the county aforesaid, upon their oaths, present in the District Court of said county that one J. E. West, whose Christian name, other than J. E., is to these grand jurors unknown, late of the county of Caldwell, laborer, on the fifteenth day of January, in the year of our Lord one thousand eight hundred and seventy-nine, with force and arms, in the county of Caldwell, and State of Texas, did then and there unlawfully, fraudulently, and feloniously take, steal, and carry away from the possession of B. T. Palmer, holding the same for the owner, two hundred and fifty head of sheep, of the value of two dollars per head, of the aggregate value of five hundred dollars, the corporeal personal property of James Culbertson; and that the said West did take said sheep as aforesaid, without the consent of the said James Culbertson, the owner thereof, and without

the consent of the said B. T. Palmer, who had the possession thereof, and with the unlawful and fraudulent intent, then and there, on the part of him, the said West, to deprive the owner of said sheep of the value thereof, and to appropriate the same to his own use and benefit; contrary to the form of the statute in such cases made and provided, against the peace and dignity of the State." Filed, March 25, 1879.

The various exceptions to the indictment having been overruled, and defendant put upon his trial, B. T. Palmer was placed upon the stand by the State, and testified that, on the fifteenth day of January, 1879, he had in his possession about one thousand and fifty head of sheep, the property of James Culbertson, and at that time had had them in charge for about two months. On that morning witness turned the sheep out of the pen, and his son drove them off to graze. When witness's son brought them back that night, about three hundred and fifty head were missing. Witness did not give defendant, or other person, his consent to take the sheep. The sheep were kept on witness's place, in the upper end of Caldwell County, near the line, and were herded on the Pace and Martinez leagues.

On cross-examination, witness says that the sheep came into his actual possession on the twenty-eighth day of December, 1878, but had been herded for him by another man for about two weeks before that time, for which service witness was paying. The sheep were delivered to him under a contract between himself and Culbertson, under which witness was to keep the sheep until the 1st of September, 1879, on shares. Witness was to get one-fourth of the wool and one-fourth of the increase. The ewes had dropped some lambs prior to January 15, 1879, the time at which the three hundred and fifty sheep were missing; and witness supposes that the wool had grown some. Witness afterwards went with his son to the prairie near old man

Jackson's, about five or six miles west from home, and found the sheep that had been missing. When found, there were one or more lambs among them, but no person with them. Witness and his son drove them home, and put them in the herd with the rest. Witness is not much of a sheep-man, and does not know whether the sheep turned over to him by Culbertson were graded, or common Mexican sheep. Had never herded the sheep himself, but had been on the prairie several times and seen them. Witness supposes that it would be difficult for a lawyer to tell one sheep from another by its countenance, but would not be a very difficult matter for an observing man to do. Prior to the loss of these sheep, witness had never noticed whether they were branded or not; but, after the last sheep had been found and turned into the herd, noticed that some had been branded on the jaw. Witness cannot say whether any of the sheep branded were among those found on the prairie or not, or whether only those so found were branded, or only those that remained at home. Witness recognized the sheep found on the prairie as the same sheep missed on the fifteenth day of January, by their general appearance, and by a peculiarly marked sheep, which was of a brown color under the belly and the lower part of the jaws, and had upon it a long, straight substance, which witness does not know whether to call hair or wool. San Marcos is about twenty-six miles west from where witness lives.

T. J. Horton, for the State, testified that he recognized the defendant as a man he saw at his place, about four miles east of San Marcos, on the seventeenth day of January, 1879. Defendant had a little flock of sheep with him, which he left grazing on the prairie when he went up to witness's house. He tried to get witness to take the sheep and take care of them for him, which witness refused to do, and defendant left. The sheep, in the meantime, had wandered out of sight, and witness does not know which way defendant carried them. Defendant came to

witness's house from a south-easterly direction, in the afternoon of the seventeenth day of January, 1879.

John Welch testified, for the State, that he knows the defendant ; saw him at the Bisbee Springs, in Caldwell County, on the sixteenth day of January, 1879. He then had with him a small flock of sheep, of two hundred and fifty or two hundred and seventy-five head. He was in a north-easterly direction from witness, towards the Green Mott. The time was between sundown and dark. Witness was in company with James Crenshaw. The Bisbee Springs are about fifteen miles, in a westerly direction, from B. T. Palmer's. Witness lives about nine miles from Lockhart, and James Culbertson is his family physician. Knows defendant well.

James Crenshaw, for the State, testified that he knows the defendant. Himself and John Welch saw him at Bisbee's Springs, in Caldwell County, on the sixteenth day of January, 1879, driving a flock of sheep. Defendant spoke to witness and Welch, and asked how he could get around the Green Mott. Defendant had herded sheep at Bisbee's Springs a year or two before that. There is now a pasture between Bisbee's Spring and the Green Mott, but witness does not now remember whether, or not, it was there that defendant used to herd sheep. Bisbee's Springs are in a westerly direction from Lytton, where B. T. Palmer lives.

James Culbertson, for the State, testified that, on the fifteenth day of January, 1879, he had a flock of about one thousand head of sheep, in the possession of B. T. Palmer, who was caring for them on shares. On that day some of them were reported missing. About eight or ten days afterwards witness found them in the possession of a man named Daniel, about four miles beyond San Marcos, in Hays County. Witness recognized the sheep by their general appearance, and by the fact that the last year's lambs were in the same mark as witness's mark. The peculiarly marked sheep spoken of by the witness Palmer was among them. There

were about two hundred and seventy-five head in the flock found at Daniel's. The defendant had herded sheep for witness about one a half years before this time, and knew his sheep well. The sheep taken were worth $2 per head. Witness did not give defendant, or other person, permission to take the sheep.

Cross-examined, witness said that his sheep were " graded sheep," and that he had owned them about one and a half years prior to the 15th of January, 1879. Witness lived in the town of Lockhart, but kept his sheep in the country, from three to ten miles distant. Had never herded them himself, but often saw them every few days, or every few weeks, and sometimes two or three months passed without his seeing them. Had not seen them for six weeks prior to the day he recovered them in Hays County, after they were missed on January 15th. Witness turned them over to Palmer's son-in-law, beyond the San Marcos river, where he found them.

O. F. Daniel, for the State, testified that, about the twenty-first day of January, 1879, defendant came to his house, about four miles beyond the San Marcos, in Hays County, and brought with him a flock of sheep, and employed witness to take care of them for him for one month, promising to give witness ten choice ewes from the flock for so doing. A few days after that, the witness Culbertson and three or four others came to witness's house and took them away, claiming them as the property of Culbertson. Defendant is the man who brought the sheep to witness. He told witness that he lived near Luling.

Cross-examined, witness said that when defendant brought the sheep to him, he claimed them as his property. The men who took the sheep away were all armed, either with six-shooters or guns. Witness remonstrated with the men, and asked if they did not intend to give defendant a chance to assert his title. To this, one of the men replied, " No, by G—d ; we have had trouble enough about these sheep."

Witness then gave them up, as he did not wish to have any trouble about them himself. Defendant was not present at the time.

The defendant offered no testimony.

*Stringfellow & McNeal*, for the appellant. The court erred in overruling defendant's motion to quash the indictment in this cause, the indictment not commencing as the Constitution and law requires. Const. 1876, p. 34, sect. 12 ; Pasc. Dig., art. 2863 ; *The State* v. *Durst*, 7 Texas, 74. The oath administered to the grand jury is not the oath required by law. As set out, that part of the indictment reads : " Duly tried on oath by the judge,  *  *  * committed within the body of the county aforesaid, on their oaths present" ( see indictment). Indictment should have been quashed therefor. Pasc. Dig., art. 2824 ; Acts Leg. 1875, p. 166 ; *Everett* v. *The State*, 4 Texas Ct. App. 159 ; *Chambliss* v. *The State*, 2 Texas Ct. App. 396 ; *Leer* v. *The State*, 2 Texas Ct. App. 495.

Indictment does not show at what term of the court it was presented, nor that it was the act of the grand jury of Caldwell County. Pasc. Dig., art. 2863. The court erred in overruling the application for new trial, as the verdict was against the law and the evidence ; the proof showing that the sheep were the property of Culbertson and Palmer as partners, and not of Culbertson alone, as alleged. *Wilson* v. *The State*, 3 Texas Ct. App. 206 ; *Henry* v. *The State*, 45 Texas, 84 ; *Samora* v. *The State*, 4 Texas Ct. App. 508.

*George McCormick*, Attorney-General, for the State. The first error assigned by counsel is met and held untenable in *Winn* v. *The State*, 5 Texas Ct. App. 621. The position that the proof shows a variance fatal to the indictment, in that Palmer had charge of the sheep on shares, and was consequently a partner and joint-owner, cannot be

maintained. Whart. Cr. Law, sect. 1826. On question of ownership, apply the facts, and see 2 Arch. Cr. Pr. & Pl., top p. 363.

Winkler, J. This is an appeal from a conviction of theft. The indictment charges the appellant with the theft of two hundred and fifty head of sheep, of the value of $2 per head, the property of James Culbertson, from the possession of B. T. Palmer, averred to have been holding the same for the owner.

The appellant (defendant below) moved the court to quash the indictment on the grounds following, to wit: 1. Because the same does not commence, "In the name and by the authority of the State of Texas." 2. Because the same does not appear to be the act of the grand jury of Caldwell County. 3. Because the oath administered to the grand jury, as set out in said indictment, is not the oath required by law. 4. Because there is no sufficient allegation of ownership of the sheep alleged to have been stolen.

The court overruled the motion to quash the indictment. A trial followed, resulting in a verdict of guilty and the assessment of four years' confinement in the State penitentiary, followed by judgment in accordance with the verdict. A motion for a new trial was made and overruled. The defendant also moved in arrest of judgment, in which the same objections to the indictment were urged as in the motion to quash, and which was also overruled.

The overruling of the motion to quash the indictment, the overruling of the motion for new trial, and the refusing to arrest the judgment, are severally assigned as error. The motion to quash the indictment and the motion in arrest of judgment embodying, substantially, the same objections to the indictment, may with propriety be considered together.

The first objection to the indictment — viz., that it does not commence, "In the name and by the authority of the

State of Texas'' — is not sustained by the record. The most that can be said in relation to this objection is, that the indictment was drawn on paper manufactured at a particular establishment, and having printed upon it a business card or advertisement of the proprietors, which is described in the brief of appellant's counsel as an advertisement of '' Barnard & Co., printers, &c.'' This may involve a question of taste, but if the manufacturer of the paper upon which the indictment was written does not object, we see no reason why the accused should. At any rate, as a matter of law, it does not vitiate the indictment, and was so held in *Winn* v. *The State*, 5 Texas Ct. App. 621.

The second objection is not tenable. On the face of the indictment the grand jurors are characterized as '' good and lawful men of the State of Texas, county of Caldwell.'' This, when taken in connection with the succeeding portions, shows satisfactorily that the indictment does appear to be the act of the grand jury of Caldwell County.

As to the third objection, — viz., that the oath administered to the grand jury, as set out in the indictment, is not the oath required by law, — it would perhaps be sufficient to say that the law has not conferred upon one accused of crime any right or authority to question the form of oath administered to the grand jury, or the form of the process upon which they were summoned.

When an indictment has been preferred, the accused is permitted to have the indictment or information set aside on either of the two grounds mentioned in art. 483 of the Code of Criminal Procedure, and no other. He is also permitted to except to the substance of the indictment or information on either of the three grounds set out in art. 487 ; and, besides these, the law declares that there is no exception to the substance of either. He is also permitted to take exception to the form of the indictment or information on the *two* grounds mentioned in art. 488, and *only* on these. These three articles — 483, 487, and 488 — embrace all the grounds

of objection to an indictment or an information which one accused of a violation of law, in either mode, is permitted to make in the first instance; subject, of course, to such modifications as have been made by legislation subsequent to the adoption of the Codes, and which will be found to be but few.

In *Schwartz* v. *The State*, the Supreme Court said: "The Code of Criminal Procedure seems to contemplate that certain specified exceptions are permissible, and that, unless the defect in the indictment be embraced in one of the prescribed exceptions, it shall not constitute a valid objection. * * * It prescribes the exceptions, and those only, which will be entertained, whether for matter of form or substance." 25 Texas, 764.

In *The State* v. *Schoolfield*, 29 Texas, 501, the court say: "The Code of Criminal Procedure provides what exceptions may be taken to indictments, dividing them into two classes, — exceptions to form, and exceptions which go to the substance of the indictment." See also *Phillips* v. *The State*, 29 Texas, 226, where the same doctrine is held. We know of no authority, either in the Code or in any adjudication under it, which authorizes one accused of crime to inquire into the form of oath administered to the grand jury.

In *Pierce* v. *The State*, 12 Texas, 210, it is stated: "The record stated that R. B. Hudnall was ordered to act as foreman of the grand jury for the present term of this court, who, being called, comes and is sworn according to the statute, to discharge the duties as foreman of the grand jury; and now come the other members of the grand jury, who took a like oath." In passing upon this ground of objection, the court said: "The objection that the jurors were not duly sworn is not supported by the record. The entry does not profess to give the form of oath administered, nor was that necessary. It recites that they were sworn 'according to the statute,' etc., which admits of no

other reasonable inference than that the oath prescribed was administered.'' It does not appear that the extract passed upon was from the indictment; but it was probably taken from the minutes of the court. At any rate, the question there raised, agreeably to later decisions, could not be raised on exception to the indictment. The present case, however, is analogous, in that the indictment does not profess to give the form of oath administered, but it does recite that the grand jurors were sworn, and the presumption must be indulged that the proper oath was, in fact, administered. There can be no necessity for an indictment to do more than to show that the grand jury were sworn, — that they acted under the solemnities of an oath.

We cannot approve the form of the recital in the indictment before us following the word *charged*, as therein employed, to wit: '' Charged to inquire into, and true presentment make of all offences committed within the body of the county aforesaid.'' This is an old form of expression, calculated to occasion controversy, as in the present case, by creating the impression that this is what the grand jury were sworn to do, and not what they were charged to do, and might well be dispensed with. In setting out the fact that the grand jury were sworn, it would not be necessary to set out at length the prescribed oath administered, in the indictment, as found in art. 356, Code of Criminal Procedure, as this, from its length, would necessarily encumber the indictment. It would be sufficient to state that the grand jury was sworn, duly sworn, or sworn according to law, and thus controversy would be avoided, notwithstanding that the form of oath cannot be inquired into on exception to an indictment.

The Code (art. 678) provides that '' a motion in arrest of judgment shall be granted upon any ground which would be good upon exception to an indictment or information, for any substantial defect therein.'' A mere *formal* objection would not be reached by a motion in arrest of judgment; such objection could only be made available by exception

taken at the proper time and in the proper manner, — that is, as pointed out in art. 488, above referred to, — whilst objections to the substance of the indictment, such as are mentioned in art. 487, could be reached by motion in arrest of judgment.

The fourth and last objection taken to the indictment is, that it contains no sufficient allegation of ownership of the property charged to have been stolen. This objection is not well taken. The indictment charges that the sheep alleged to have been stolen were "the corporeal personal property of James Culbertson," which is a clear averment of ownership. We are of opinion there is no material defect in the indictment, either of form or substance; and we find no error either in overruling the exceptions to it, or in refusing the motion in arrest of judgment.

The only remaining error assigned is, that the court erred in overruling the motion for a new trial. The complaints made in the motion relate mainly to the evidence as to the ownership of the property, and the charge of the court. It is urged that the evidence showed that the property in question was the property of Culbertson and Palmer as partners, and not the property of Culbertson alone, as averred in the indictment.. The proof was, that recently before the property was stolen, — if stolen at all, — it was placed in the hands of Palmer by Culbertson, the owner, under a contract between Culbertson and Palmer, in which it was stipulated that Palmer was to keep the sheep until September, 1879, on shares; Palmer to have one-fourth of the wool and one-fourth of the increase; that the ewes had dropped some lambs prior to the time when the sheep were missing, for the theft of which this indictment was found.

We are of opinion that, under the circumstances elicited in evidence, the ownership of the sheep was properly laid in Culbertson, and that it was not partnership property of Culbertson, the employer, and Palmer, the employee; that, as to the property being a subject of larceny, it is analogous

to the case of one who labors upon the farm of another under an agreement to have a share of the crop. In that case, agreeably to Mr. Wharton, "until his share is separated from the general mass, and set apart to him, the property of the entire crop remains in his employer; and, in case of larceny, the property must be laid in the latter." Whart. Cr. Law, sect. 1827. The evidence warranted the charge of the court on the subject of ownership.

It is further urged that there were, in fact, no sheep lost from the flock in charge of Palmer. We are of opinion that the proof makes a case to the contrary; that it shows that the missing sheep (and of which there was proof of identity) were seen by more than one witness in possession of the defendant. If the defendant was really guilty of theft, his liability to punishment was not removed by the fact that the property was subsequently reclaimed by the owner.

The position contended for, that the sheep had not been stolen, but had only strayed away, and were afterwards found, is not sustained by the evidence. The defendant is shown to have had in his possession a bunch of two hundred and fifty or two hundred and seventy-five head of sheep, corresponding with those missing. These he was claiming as his own; at any rate he, to all appearances, claimed to own them, and to contract with others for taking care of them for a time. On the trial, however, he offered no testimony as to his right to the property. On this subject there was no material error in the charge.

The judge who presided at the trial had his attention called to the testimony and the charge, in reviewing them on hearing the motion for a new trial. If error had been made to appear, the judge would have applied the proper corrective, by setting aside the verdict and awarding a new trial. This he declined to do, and we have not been able to discover any error in the ruling of the court below.

The judgment of the District Court is affirmed.

*Affirmed.*