[No. 3282.]

## John Black v. The State.

1. Burglary — Indictment.— When the burglarious entry was made in the daytime the indictment need not allege that the entry was without the consent of the owner of the house, or that of any other person. .

2. Burglary with Intent to Commit Theft — Indictment — Variance. — In charging a burglary with intent to commit theft, an indictment may in a single count allege not only an entry with intent to steal, but also a theft after the entry. When the intent only is relied on, it is not necessary to designate what particular property the accused intended to steal; and when specific articles are unnecessarily designated, a conviction may be had though the proof shows that the accused knew nothing about such articles, provided it clearly appears that he entered with intent to commit theft. Nor will there be a variance between the allegation and the proof if the evidence, going beyond the allegation of the intent only, shows that he actually stole the specific articles unnecessarily designated in the indictment. But if the indictment designates specific articles as those stolen, the proof must correspond with the allegation or there will be a variance.

3. Presumption of Intent — Charge of the Court.— By article 50 of the Penal Code it is provided that "the intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act." Nevertheless it has often been held improper to give this article in charge to the jury, inasmuch as the presumption of innocence outweighs that of guilt arising merely from the means used, and it is incumbent on the State, by legal evidence, to overcome the presumption of innocence and establish the guilt of the accused beyond a reasonable doubt.

4. Same — Case Stated.— In a trial for burglary with intent to commit theft the trial court instructed the jury as follows: "If the jury believe from the evidence that the defendant, with the intent to commit the offense of theft, did by force and breaking enter the dwelling-house of R. S. Hardin, in Hunt county, on some day in December, 1884, and did, after such entry and whilst in said house, steal, take and carry away certain personal property belonging to Grude McFaddin, the law presumes, in the absence of evidence to explain the taking, that the entry was made with intent to steal such personal property, although defendant at the time of the entry may not know that such property was in such house." Held, that this charge was erroneous because it was upon the weight of the evidence, and instructed the jury that the law presumed a fact, to wit, the defendant's intent. which they could legally find from the evidence alone, and which could not be supplied by presumption.

5. Circumstantial Evidence — Charge of the Court.— When the inculpatory evidence is wholly circumstantial, the law controlling that species of proof is a necessary part of the "law of the case," and must be given in charge to the jury.

Appeal from the District Court of Hunt. Tried below before the Hon. J. A. B. Putman.

A term of eight years in the penitentiary was the penalty assessed against the appellant upon his conviction for the burglary of the dwelling-house of R. S. Hardin, in Hunt county, Texas, on the 9th day of December, 1884.

Grude McFaddin was the first witness for the State. He testified that, in December, 1884, he lived in the house and with the family of R. S. Hardin, in Hunt county, Texas. On or about the night of the 9th of that month there was taken from the said house of R. S. Hardin, and from the possession of the witness, the following articles of personal property, to wit: One watch of the value of $10; one seal of the value of $5; one breastpin of the value of $15; one coat of the value of $10, and one pair of pants of the value of $8. The said articles were the property of the witness, and were taken from the house of the said Hardin, and from witness's possession, without the consent of the witness. The witness did not give his consent to the defendant to enter the house of the said Hardin. Witness recovered the articles described next day, through Captain Anderson, the city marshal of Greenville.

Mrs. R. S. Hardin testified, for the State, that she remembered the occasion on which Grude McFaddin lost several articles of property from the home of the witness's husband in Hunt county, Texas. Witness left the house early on that morning, and did not return until late in the evening. She left no one at the house when she went off. Before leaving she lowered all of the windows and locked all of the doors. The front door was locked with a key, and the key was left hanging on a nail very near the lock, on the outside, and could be readily seen. The house described was entered by some one on the day mentioned in the indictment. None of the doors or windows were broken. The front door was still locked when witness returned, and the key was hanging where she left it. Seemingly the premises were just as she left them in the morning, but when she got into the house she found some strange, cast-off clothing, and, upon investigation, missed several articles of property which belonged to Grude McFaddin. The house described was situated about three miles from Lone Oak, and about one and a half miles from the Missouri & Pacific Railway, between Lone Oak and Greenville. Witness gave no one her consent to enter that house.

Mrs. Rawley testified that she lived in Hunt county, Texas, about three hundred yards distant from, and in sight of, the house of R. S. Hardin. Two men, strangers, traveling on foot, passed the wit-

ness's house on or about the 9th day of December, 1884, stopping to get a drink of water. Witness did not go out of her house, but saw them through a window. They were both strangers to the witness, and she would not be able to identify either of them. These two men left witness's house in the direction of R. S. Hardin's house. When they got opposite that house, one of the men went up on the front gallery, and the other stood at the gate. After a short time the man at the gate joined the one on the gallery, and the two passed out of witness's sight. Hardin's house was so situated that the witness could not see the front door from her house. She did not see the men enter the house, nor did she know as a fact that they did enter the house.

R. S. Hardin was the next witness for the State. He testified that he remembered Grude McFaddin's loss of personal property from his, witness's, house, in Hunt county, Texas. Witness was at home but little on that day. On the day after the burglary, witness joined Captain Nath. Anderson in the search for the missing property. Witness was with Captain Anderson when he arrested the defendant and two others at the Sand house near the railroad round-house in Greenville. At the time of his arrest, the defendant had on the articles described by the witness McFaddin, except the breastpin, which articles the witness identified as the property of McFaddin. Witness had never before seen the defendant or either of his companions. He did not know that the defendant had, or had not, ever been in his, witness's, house, nor did he know that the defendant had any knowledge of what articles the house contained. Witness did not give his consent to the defendant or other person to enter his house.

City Marshal Anderson, of Greenville, corroborated the testimony of R. S. Hardin, and testified that he had never seen the defendant or either of his companions before he arrested the three at the Sand house on the 10th day of December, 1884. He jailed the defendant, turned over the missing property, save the breastpin (which he did not recover), to McFaddin, and released the two strangers whom he arrested with defendant.

H. J. Saunders, the next witness for the State, testified that he lived in the village of Lone Oak, Hunt county, Texas. To the very best of the witness's knowledge and belief, the defendant was the man who came into witness's shop in Lone Oak early on the morning of December 9, 1884, and engaged witness in commonplace conversation for a few minutes. Witness had never seen the defendant

before nor since until this trial, nor did he know from which direction the defendant came to Lone Oak, nor in which direction he went when he left it.

C. S. Jones, for the State, testified in effect the same as did the witness Saunders.

That the charge of the court was incorrect in several particulars, and that the court improperly refused to grant the appellant's application for a continuance, were the grounds relied upon for new trial.

*B. F. Looney* and *D. Upthegrove*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Appellant was indicted for a burglarious entry in the day-time into the house of one Hardin, with intent to steal the property therein of one McFaddin. The indictment sufficiently charges the offense. It was not essential that it should allege, further, that the entry was without the consent of the owner or any one authorized to give such consent. (*State v. Williams*, 41 Texas, 98; *Buntain v. The State*, 15 Texas Ct. App., 485.) All the statutory ingredients of the crime of theft were properly alleged, as should have been done. (*Reed v. The State*, 14 Texas Ct. App., 662.) In an indictment for burglary with intent to commit theft, it is permissible to charge not only an entry with intent to steal, but also a theft after entry, in the same count in the indictment. (*Shepard v. The State*, 42 Texas, 501; *Hobbs v. The State*, 44 Texas, 352; *Howard v. The State*, 8 Texas Ct. App., 447; *Miller v. The State*, 16 Texas Ct. App., 417.)

At common law it was sufficient, in all cases where a felony had actually been committed, to allege the commission without the intent (1 Hale's P. C., 560; 2 East's P. C., 514); and in such cases no evidence except that of the commission of the offense was required to show the intention. (Roscoe's Crim. Ev. (7th ed.), 371. See, also, *State v. Golden*, 49 Iowa, 48.) But under our statute (Penal Code, art. 704) the burglarious entry must be with the intent of committing felony or the crime of theft, and the main intention controls the subsequent act of theft. The intent with which the burglarious entry must be accompanied is of the essence of the offense, and is a fact which should be expressly alleged in the indictment, because it is a fact which is essential to be proved by the State. (*Reeves v. The State*, 7 Texas Ct. App., 276.) It is required by statute that "everything should be stated in the indictment

which it is necessary to prove" (Code Crim. Proc., art. 421); and further, that "where a particular intent is a material fact in the description of the offense, it must be stated in the indictment." (Code Crim. Proc., art. 423; *Morris* v. *The State*, 13 Texas Ct. App., 65.)

In burglary at common law the rule was well settled that " evidence that a felony was actually committed is evidence that the house was broken and entered with intent to commit that offense." (1 Hale's P. C., 560; 2 East's P. C., 514; Roscoe's Crim. Ev. (7th ed.), 369.) With us, however, "the intent" in burglary is of the essence of the offense, and must be proved like any other substantive fact; not, indeed, by express and positive testimony, but by the best evidence of which the case is susceptible. (*Reeves* v. *The State*, 7 Texas Ct. App., 276.)

In the case we are considering, appellant was an entire stranger in the country where the burglary was committed, and could not possibly have known that the property he is alleged to have stolen was in the house he is charged with breaking. It is clear that he could not have entered the house with the purpose of stealing that particular property.

It was not necessary that the indictment should have specifically described the property intended to be stolen (*Martin* v. *The State*, 1 Texas Ct. App., 525; *Coleman* v. *The State*, 2 Texas Ct. App., 512); but the fact that the specific articles are mentioned, even though he may not have known that they were in the house, would not invalidate the conviction if it be made clearly to appear that his intent was to commit the crime of theft; nor would the fact that he stole the specific articles named be a variance from the allegation that he entered with the intent to commit the crime of theft. If his entry was with the intent to commit the crime of theft, and he actually committed the offense by taking certain specific articles, the offense is complete. In other words, it is the intent, and not the character of the articles stolen after the entry, which characterizes and makes the offense complete. A party may break into a house with intent to steal provisions, and, not finding such provisions, may actually steal clothing, and yet he would be as guilty of the crime of burglary as though he had taken the provisions he had intended to steal; because his intention primarily was to commit theft. But where the indictment selects any articles as those stolen, the proof must correspond with such allegation or there will be a variance. (*Allen* v. *The State*, just decided, *ante*, p. 120.) Whether he stole the particular property intended, or stole some article which he had not

originally intended to steal, the fact that he committed theft of any property whatever is a carrying out of his intention, which was to commit theft, and makes him equally guilty. (*Phillips* v. *The State*, 29 Texas, 226; 1 Bish. Cr. L. (7th ed.), §§ 342 and 343.)

Following the rule of the common law with regard to evidence of intent, the learned judge, in his charge, instructed the jury as follows: "If the jury believe, from the evidence, that the defendant did, with the intent to commit the offense of theft, by force and breaking enter the dwelling-house of R. S. Hardin, in Hunt county, on some day in December, 1884, and did, after such entry and whilst in said house, steal, take and carry away certain personal property belonging to Grude McFaddin, the law presumes, in the absence of evidence to explain 'the taking, that the entry was made with intent to steal such personal property, although defendant, at the time of such entry, may not know that such property was in such house."

It is provided by our statute that "the intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act." (Penal Code, art. 50.) And yet it has been held improper, in a number of instances, that this statute should be given in charge 'to the jury (*Luera* v. *The State*, 12 Texas Ct. App., 257), because the presumption of innocence is stronger than any presumption of guilt arising merely from the means used to accomplish the guilty purpose, and the burden rests upon the State, in a criminal trial, to overcome the presumption of innocence, and to establish the guilt of the accused by legal evidence beyond a reasonable doubt. (*Jones* v. *The State*, 13 Texas Ct. App., 1; *Thomas* v. *The State*, 14 Texas Ct. App., 200; *Brinkoeter* v. *The State*, 14 Texas Ct. App., 67.)

As we have more than once stated above, "the intent is of the essence of the crime in burglary," and it is a fact which must be not only alleged but proven; not positively, since, perhaps, it is incapable of positive proof, but by such evidence as will satisfy the jury of its existence. Its existence is a fact not to be presumed by law, but is really an inference of fact to be ascertained and found by the jury from the other evidence in the case. Such an inference is similar to the one to be drawn from the possession of goods recently stolen, which latter, Mr. Wharton says, "is not one of law, but of probable reasoning, as to which the court may lay down logical tests for the guidance of the jury but can impose no positive binding rule." (Wharton's Crim. Ev. (8th ed.), §§ 758 to 761, inclusive.) He further says that "where the charge is burglary, it is alleged that mere possession of the stolen goods, unaccompanied

by other suspicious circumstances, is not enough to give *prima facie* evidence of the burglary." (Whart. Crim. Ev., § 763.)

We are of the opinion that the charge of the court is obnoxious to the objection that it was upon the weight of evidence, since it instructed the jury that the law presumed a fact which it was essential for them to find, and which could only be found by them from the evidence. Another fatal objection to the sufficiency of the charge of the court is that it omits entirely to give the jury any instructions with regard to circumstantial evidence. The case was one wholly of circumstantial evidence, and the jury should have been properly instructed with regard to the rules pertaining to that character of testimony.

For errors in the charge of the court the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered April 29, 1885.]