## T. G. BIRD v. THE STATE.

### No. 2795.   Decided February 24, 1904.

**1.—Desecration of Graveyard—Wrongfully Cutting Shrub.**

In a prosecution under article 366, Penal Code, for cutting certain shrubs growing within a graveyard, the court should charge the jury that the act must have been done wrongfully.

**2.—Same—Definition of Inclosure.**

The court should give a correct and pertinent definition of the term inclosure of a graveyard in its charge to the jury, and that there must be an inclosure for the place of burial within ·which the shrub is growing, which is alleged to have been cut or destroyed, to constitute the offense under article 366, Penal Code, and unless the graveyard is entirely inclosed a conviction can not be sustained.

**3.—Same—Good Faith a Defense.**

Where the issue oñ good faith was raised by the evidence, to wit, that the graveyard had been neglected and had grown up in a wilderness and become the rendezvous of varmints, and that the defendant cut the shrubs to get at them to protect his chickens, there was lacking any intent to desecrate or injure the graves, even if the graveyard had been properly inclosed, and the court should have submitted this issue.

Appeal from the County Court of Navarro. Tried below before Hon. A. B. Graham.

Appeal from a conviction for cutting certain shrubs growing within an inclosure which was a graveyard; penalty, a fine of $5.

The following statement is taken from appellant's brief, which is substantially correct:

The State witnesses testified that no one had been buried there in fifteen or sixteen years. That the rose bushes were so dense that no one could go into same or be buried there, without first cutting shrubbery away. That a paling fence was built around same thirteen years ago, wire fence five or six years ago. Appellant told witness Conner that varmints had been catching his chickens; that he had killed three pole-cats there and that he could not get to kill them without cutting and cleaning off the graveyard, and he had same done. That the graveyard was fenced. This was all the testimony for the State in reference to the graveyard being fenced, and the wrongful cutting of rose bushes, etc.

Witnesses for the defendant testified that the graveyard was not inclosed; that there were a few posts and palings tacked up in a few places; that the fence was down; that it was impossible to bury any one in the graveyard without first cutting growth from same; that the fence was down on the north side; posts seemed to be gone; that larger trees were left and trimmed up nicely; that the graveyard was not inclosed by a fence; that it appeared to be out on the commons; that shrubs were so dense that people could not tell what the plot of ground was for; north side of fence had been down for a long time; that there was no fence on the north side; that the condition of the graveyard was bad; that the fence was down on the south side. Witness fixed it up at southeast and southwest corners, next to where he lived, to keep his stock from getting out.

T. G. Bird, in his own behalf, testified that he was being bothered with polecats; that they had caught 120 of his chickens in the last two years; that he made inquiry who, if anyone, owned or was interested in the graveyard; that he had killed two polecats in the graveyard; that the larger trees had been left and trimmed up; that the fence was down on the north and south sides, and partially up on the east and west, at the corners; that he did not intend to injure anyone, or the property of anyone, and had he thought that anyone would object to having graves cleaned off, he would not have had same done.

*Grantham & Pinkerton,* for appellant.—The court's charge did not instruct the jury that they must believe beyond a reasonable doubt that defendant unlawfully, and wrongfully injured, cut, removed, etc., the charge leaving no option to the jury, but instructed them to find defendant guilty if they found he did the thing charged, whether lawfully and without wrong or not, when the information alleged that it must be wrongfully done. And the statute provides that it must be wrongfully done. White's Ann. Penal Code, art. 366. It is not enough that the charge give the statute under which the prosecution is had, but must go further and apply it to the particular case, when charging directly in reference to the case being tried. Whaley v. State, 9 Texas Crim. App., 305; Scott v. State, 10 Texas Crim. App., 112.

The charge is further erroneous in that it did not correctly define to the jury an inclosure. Anderson's Law Dic.; Black's Law Dic.; Webster's Dic.; 16 Am. and Eng. Enc. of Law, new ed., pp. 144, 145, and cases there cited. Said charge is further erroneous in this, it nowhere submitted the issues raised by the defendant. The testimony showed that the graveyard was a public nuisance; that defendant acted in good faith in abating the nuisance, and without any wrongful intent. Appellant asked special charges covering all of said issues, which the court refused to give. Bell v. State, 17 Texas Crim. App., 538.

*Howard Martin,* Assistant Attorney-General, for the State.—Appellant

was convicted by virtue of article 366, Penal Code, of having wrongfully injured, cut, removed and destroyed trees and shrubbery growing within an inclosed graveyard, and his punishment assessed at a fine of $5. His defense was (1) that the graveyard had been abandoned, that no one was caring for the same, and that the shrubbery, trees, etc., had become a resort for wild animals, varmints, etc., and it thereby became a nuisance and dangerous to his family and an injury to his property; (2) that the yard was not inclosed within the meaning of the statute.

His first contention is raised by objections to evidence admitted; objections to evidence rejected; by requested charges and exceptions to the main charge of the court. In answer to this contention of appellant, the State cites the case of Phillips v. State, 29 Texas, 226. Under the authority of this case all these questions should be decided adversely to appellant's contention. This is the only case reported under this statute.

As to his second contention, that the court erred in his definition of an inclosure, the State submits that the definition is as favorable to appellant as he is entitled to. Under the authority of Phillips v. State, supra, the State submits that this case should be affirmed.

HENDERSON, JUDGE.—Appellant was convicted under article 366, Penal Code, for cutting certain shrubs, etc., growing within an inclosure which was a graveyard. Appellant complains that the court in instructing the jury, when he come to apply the law to the facts of the case, omitted the word "wrongfully." He contends in this connection that he presented matters of defense, which, if the jury believed, should acquit him; but that the court simply told the jury, if appellant cut any shrubbery growing within an inclosure of any graveyard in or near the city of Corsicana, to find him guilty. We believe it was the duty of the court to use in connection with said charge the word "wrongfully," it being the language used in the statute in defining the offense.

Appellant also contends that the evidence clearly shows that said graveyard was not inclosed, but that one string of fence was gone, and it was broken down in other places. This was the state of the evidence. The jury appear to have been bothered in regard thereto, and made inquiry of the court; whereupon the court instructed them, "that an inclosure is an obstruction intended to keep off and cut out trespassers." And the court in the same connection refused the following requested instruction: "You are further instructed that the word inclosure means the act of inclosing, the separating of land from common ground into distinct possession by a fence. Now, if you have a reasonable doubt as to whether said graveyard was an inclosure as above defined, you will acquit defendant, and so say by your verdict." We think in view of the definition of the offense, that is, the definition is to the effect that there must be an inclosure for the place of burial, and if any person shall cut, destroy or remove any tree or shrub, growing within said inclosure,

he shall be punished, etc., we believe the requested charge should have been given, as it embodies a correct and pertinent definition of inclosure. Moreover, in the view we take of the evidence, the plot of ground which had years before been used as a place for the burial of the dead was out of repair, and not entirely closed by any fence or obstruction. We are inclined to the view that the conviction could not be sustained.

Appellant also requested an instruction as to his good faith in cutting some bushes or shrubs which were in the graveyard; that the graveyard was neglected and had grown up in a wilderness; was situated near his house and was the rendezvous of polecats that preyed on his chickens; and what he did was merely to cut down some of the bushes in order to get out the polecats. However, it is contended by the State that this would be no defense under the case of Phillips v. State, 29 Texas, 226. That was a case where the defendant removed a line of fence from around a graveyard, and left the graveyard in his field. The court in that connection, citing Bishop's Crim. Law, sec. 250, with approval, say: "It is a well settled principle of law that when a man does a thing prohibited with the intent the law forbids, it will not avail him that he also intended ultimate good; as on an indictment for obstructing a road, that he has opened a better way." Of course where one intends the wrongful act prohibited, other good intention will not avail him. But we do not believe the principle is applicable to the state of case here presented. There appellant claimed that by taking the graveyard into his field he inclosed it with a better fence than that which formerly existed. Here the proof showed that the bushes and shrubs, which constituted a tangled wilderness (being the rendezvous of varmints preying on his fowls), were cut with intent to get at the varmints. Even if there was proof of actual injury, it occurs to us there was lacking any intent to desecrate or injure the graves, even if the graveyard had been properly inclosed. At any rate, the jury should have been left to determine whether or not the act was wrongfully done.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*